MUNICIPAL SECURITIES CORPORATION, a Corporation, Respondent, v. EDWARD P. MORIARTY, Appellant.

Kansas City Court of Appeals, March 5, 1917.

1. SPECIAL TAX BILLS: Validity: Grading Street: Assessment of Entire Cost on One Side of Street; Adherence to Prescribed Methods. Where the City Charter, and the ordinance specially authorizing the grading of a street, required the cost to be assessed against the lots on both sides of the street and made no mention of the fact that the land on one side was beyond the city's jurisdiction, and, because it was, the city officers assessed the cost all on one side, this rendered the tax bills invalid so far as the proceedings in *invitum* are concerned since such assessments was wholly without legislative warrant. The rule is well settled that the validity of tax bills depend upon a substantial adherence to the method and procedure prescribed by the legislation authorizing the particular work. This does not mean that if the legislation authorizing the work had, in view of the particular situation, recognized it and made provision therefor by directing the cost to be assessed all on one side, the tax bills would be invalid.

2. ———: ———: ———: ———. Although tax bills may not be valid on account of some defect in the procedure by which they are created, yet if the contractor was induced to undertake the work relying upon the agreement of the property-owners not to contest their validity, then such property owners are estopped to take advantage of such defect.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED AND REMANDED.

*Lathrop, Morrow, Fox & Moore* for appellant.

*Scarritt, Scarritt, Jones & Miller* and *W. R. James* for respondent.

TRIMBLE, J.—This action is on two special tax bills respectively issued against two of defendant's lots for the grading of State street in Kansas City, Missouri.

The trial court sustained the tax bills and the defendant appealed.

The street in question was first dedicated to the public by the plat of "Mellier Place" an addition to Kansas City, Mo., on which it appears as "Interstate Avenue," thirty feet in width, having, as its west line, the State line between Kansas and Missouri. It is, therefore, a street thirty feet wide, lying wholly in Missouri, but with its west line coinciding with the boundary line between the two States. In August, 1898, Kansas City, Missouri, by ordinance, changed the street's name to State street.

The proceedings by which the grading was ordered, and on which the tax bills rest, were begun sometime in 1912. The eleventh paragraph of section 3, article 8 of the Kansas City Charter, under which the proceedings were had, provides that when the work of grading a street is to be paid for in special tax bills, the cost shall be charged as a special tax on all lands on both sides of the street. [Kansas City Charter, 1909, p. 315.] And the ordinance constituting the city's legislative authorization of the work, specified that said street be graded "to the full width thereof" and required the cost thereof to be assessed against property "on both sides of the highway," these assessments to be evidenced by special tax bills issued against the property. Defendant's two lots abut upon the east side of said street.

The city engineer's office filed an "approximate estimate" of the earth, solid rock and loose rock to be removed, in which the amount of earth necessary to be removed was estimated to be 8650 cubic yards, the loose rock was approximated at fifty cubic yards and the solid rock at 200 cubic yards. Said office accepted "unit bids" for the respective kinds of excavation stated. Plaintiff, who was the successful bidder and to whom the contract was awarded, made a bid of twenty-four cents per cubic yard for earth, $1.30 for each yard of loose rock and $1.30 for each yard of solid rock. Based on the amount of excavation required in the "estimate," the above prices would have made the entire work cost $1953.

When the work was done, however, it was found that the grading required the excavation of 3190.4 yards of solid rock, 1997.1 of loose rock, and only 3619 yards of earth making the entire cost of the work, and for which tax bills were issued, aggregate $7669.09, almost four times the estimate cost.   This entire amount was apportioned among and assessed upon the lots *on the east side of the street*.   Defendant claims that this was a direct violation of the charter and of the terms of the ordinance, which, as stated, provided that the cost should be assessed against the property on both sides of the street.   It would seem that, where the charter and the ordinance required the cost to be assessed against property on *both* sides of the street and the entire cost was assessed againts *one* side only, and the tax bills are issued in accordance therewith, such assessment was wholly without legislative warrant, and the tax bills are invalid.   The rule is well settled that the validity of tax bills depend exclusively upon a substantial adherence to the method and procedure prescribed by the legislation authorizing the particular work and a similar adherence to the power granted the city to legislate thereon.   [Barber Asphaly Paving Co. v. Munn et al., 185 Mo. 552, 574; Rose v. Trestrail, 62 Mo. App. 355; City of Excelsior Springs v. Ettenson, 120 Mo. 215.]

But plaintiff contends that inasmuch as the land on the west side of the street lies in Kansas and is outside of and beyond the jurisdiction of the city, the entire cost of grading the street must be assessed against the lots on the east side or else the city would be powerless to grade a street whose outside line was coincident with the city limits.   And plaintiff cites Brosnahan v. Pitcher, 133 Mo. App. 660, in support of the proposition that the fact of a lack of jurisdiction over property on the other side of the street will not prevent the city from exercising jurisdiction over the side that is within its limits nor forbid the city from compelling the improvement of the street at the expense of the property that is within the city.   We need neither affirm nor deny that proposition here, for, if it be conceded that the city has authority,

under the circumstances disclosed, to direct that the cost be assessed against the property on one side only, still *there is on legislative declaration that such shall be done.* The proceedings say nothing about the street abutting on territory beyond the city's control and that, for that reason, the cost must be borne by the property on one side only.

But it seems that the Kansas authorities had opened and graded a street, thirty feet in width, lying alongside and immediately adjoining State street, so that there were two streets, one in Kansas the other in Missouri, lying side by side and forming, in fact and as opened on the ground, one avenue or street sixty feet wide, on which only the grading of the east half remained to be done. And plaintiffs say that, since this was the real situation, the direction to charge the cost to both sides of the street may be treated as mere surplusage. In other words, that the proceeding on which the tax bills rest should be construed the same as if the city had legislatively declared that it would grade the east half of the sixty foot avenue, in existence on the ground, and charge the cost thereof to the property abutting on the east side thereof, when there is nothing of that nature stated in the proceedings and the matters that are stated therein are expressly to the contrary. We do not think the legislative proceedings of the city providing for the making of a public improvement at private expense are open to such equitable construction either by the ministerial officers whose duty it is to apportion and assess the cost, or by the courts when called to pass upon such proceedings. If the city had in its legislation taken cognizance of the situation and had said that in view of such situation the cost of the improvement should be charged against the property on the east side, then a different question would be presented. But the city did not do so, and we cannot, by any lawful method known to us, twist its legislation into a different shape and then declare that, as thus twisted, it constitutes a legal basis on which the tax bills can rest.

This view makes it unnecessary for us to go into the question whether the finding by the Board of Public Works that plaintiff was the "lowest *and* best" bidder can be afterwards questioned in the courts in the absence of fraud. Nor whether the method of accepting "unit bids" was proper under the circumstances of this case where the character of the excavation needed may have been disclosed to view.

However, it appears from plaintiff's petition, and also from the other pleadings in the case, that after the contract was let to plaintiff, there was some doubt as to the legality of the proceeding on account of the matter herein above stated, and for the purpose of inducing the said plaintiff to enter into said grading contract and do the work, the property-owners, including defendant herein, executed and delivered to plaintiff their written agreement that, in consideration of his entering into the contract and doing the grading, they would, upon the acceptance of the work by the city authorities, pay the tax bills which might be issued against their respective properties, and would not contest the validity of such bills; that thereupon, in consideration of said written agreement and induced thereby, plaintiff laid aside his doubts as to the legality of the proceedings and entered into said public contract and performed the work, whereby defendant is now estopped to question the legality of the tax bills. This written agreement was attached to the petition as an exhibit to the third count thereof. Defendant, in his pleading, admitted that he signed this agreement but set up that he was induced to sign it by the false and fraudulent representations of plaintiff as to the cost of said improvement. This the plaintiff denied.

The record shows that each side was prepared to offer proof on the question of fraud and false representations, but the court, being of the opinion that the tax bills were valid, announced that the agreement not to question the tax bills was immaterial, and did not hear the evidence of the parties on that issue. To this action both sides excepted.

·We think the tax bills are invalid and should be so declared, unless defendant is bound by the agreement he signed whereby he induced plaintiff to do the work, and thereby estopped himself from questioning the validity of the bills.· The case should, therefore, be reversed and remanded for a new trial in which the issue of fraud and misrepresentations as to the agreement may be fought out and determined. Accordingly it is so ordered. All concur.