EDWARD AUSTIN ET AL. v. W. S. DICKEY ET AL., Appellants.—9 S. W. (2d) 593.

Court en Banc, July 3, 1928.

*Miller, Winger & Reeder, Caleb S. Monroe* and *Clarence S. Palmer* for appellants.

*Scarritt, Jones & North* for respondents.

686

688

GANTT, J.—Plaintiffs seek to cancel special tax bills against lots owned by them in Kansas City, Missouri. The bills were for the regrading of Main Street between 24th Street and Grand Avenue. On the trial, the issues were found in favor of plaintiffs. Defendants appealed.

In the case of Seested v. Dickey, 318 Mo. 192, 300 S. W. 1088, we held a tax bill issued against other land for the same work to be valid. We further held that "the benefit district should have included a strip 150 feet wide along the west side of Main Street, in the tract known as 'Station Park,' and that the west boundary line of the district, as extended from the south, should have continued north until it reached the Station Park tract, so as to include all of Tract C not included in Station Park." The evidence in said case was offered and admitted in the instant case. We adhere to all of our rulings in the Seested case.

With exceptions to be presently noted, the issues in the instant case were determined adversely to respondents in the Seested case. Reference should be made to the opinion in that case for a statement of the facts in the instant case.

I. Respondents contend no interest should be allowed on the tax bills until the amount due has been determined by a judgment. They further contend that if interest is allowed it should not exceed six per cent.

The tax bills, in compliance with the charter, contain the following provision:

"This tax bill, including each installment thereon, if not paid in full before the expiration of thirty days from the date hereof, shall bear interest from this date at the rate of seven per cent per annum, and when any installment becomes due and collectable, as herein provided, interest thereon and on all unpaid installments shall be due and collectable to that date. If any installment of this tax bill be not paid when due, then all the unpaid installments shall immediately become due and collectable, together with interest thereon at the rate of eight per cent per annum from the date to which interest has already been paid on said installments."

It is argued that "these interest provisions of the charter are based upon the assumption that the tax bill contemplates on its face what the charter contemplates and requires, namely, a correct recital of the amount of taxes." We have ruled to the contrary in the following cases: [Neill v. Ridge, 220 Mo. 233. 119 S. W. 619; Neenan v. Smith, 60 Mo. 1. c. 295.]

It is also argued that the per centum provided for in the charter is a penalty and not interest and that it would not relate back to the date of the original tax bill. This, also, has been ruled to the contrary in the case of the City of Boonville ex rel. Cosgrove v. Stephens. 141 S. W. 1111.

Respondents contend they were unable to determine the amount due on the tax bills and, therefore, could not stop the accruing interest by a tender, and that it would be contrary to the true principles of law and equity to compel the payment of interest under the circumstances.

In answer to this contention appellants direct attention to the calculation of respondents made in their brief of the amount the tax bill should be reduced as evidence of their ability to make a tender. In any event, the allowance of interest is governed by statute, and we are without authority to legislate on the question.

It is argued that if interest is allowed it should not exceed six per cent. If we are without authority to disallow interest on the tax bills, we are without authority to reduce the rate.

The contentions are overruled.

II. In the Seested case, supra, we ruled that the work of removing from the street the earth and rock occasioned by "forced slides" was extra work and not work directly provided for by the contract. In that case the owner of the lot had entered into no agreement regarding the work connected with the "forced slides." In the instant case the owners of the lots were

parties to an agreement with the Mayor, Common Council and Board of Public Works, as follows:

"We also consent that the contractor, in grading said Main Street between said points, may be required to slope off the banks or sides of all cuts made in the street, to such an extent as may be deemed necessary by the city engineer to prevent earth or rock falling from adjacent property on to said street, and to include the cost of removing such earth and rocks from the slope or sides of the embankment in the tax bills issued for the grading of said street."

The grading contract provided for a payment of ninety-six and one-half cents per square yard. The actual cost of the extra work was kept by the city officials and was determined to be two dollars per square yard.

It is argued that the above agreement contemplates the payment of only 96½ cents per square yard for this extra work. We do not so interpret the agreement. If it had been the intention to limit the cost for this extra work, it would have been so stated in the agreement.

In this connection attention is directed to Section 2, Article 8, of the Charter of 1909, which provides that all public work which has to be paid for in special tax bills shall be done by contract let to the lowest and best bidder. This provision was not followed in providing for this extra work, but the owners of the lots in question consented to this work without a compliance with this provision, and they consented that the cost of the work might be included in the tax bills. The contractor testified that he relied upon this agreement in contracting to perform the work, and the assignee, Mr. Dickey, testified that he relied upon the agreement in purchasing the bills. Therefore, as to this question they should not now be heard to complain.

III. We are urged by respondents and appellants to direct the trial court as to the method of determining the value of the omitted land. The value of the land in the benefit district as fixed by the city assessor must be taken as a basis. With this basis, the value of the omitted land (including the streets and alleys in that part of the benefit district in Station Park) is the amount the land valued by the city assessor would have been increased in value by the addition thereto, on June 8, 1915, of the omitted land, including said streets and alleys.

It follows the judgment is reversed and the cause remanded with directions to the trial court to ascertain the value on June 8, 1915, of only that part of the east 150 feet of Station Park and of that part of Tract "C" not included in Station Park, which were not in the original benefit district, and of the streets and alleys in that part of

Station Park in the benefit district, and to.add the values thus ascertained to the sum of $753,115, the value of the property included in the district, and render judgment for appellants upon the tax bills for that proportion of the same which would remain after deducting a sum which bears to the amount of the tax bills the same proportion as the value of the omitted land, streets and alleys bears to all the property which should have been included in the benefit district added as above indicated. All concur, except *Blair, J.,* who dissents.