F. J. POWELL, R. R. RISTINE and NEWTON COUNTY, Appellants, v. CITY OF JOPLIN.—73 S. W. (2d) 408.

Division Two, June 19, 1934.

*Foulke & Foulke, Leo Johnson* and *Leslie D. Rice* for appellant.

*R. A. Pearson* for respondent.

FITZSIMMONS, C.—Plaintiffs appeal from a judgment of the Circuit Court of Newton County, denying relief and dismissing their bill to restrain and enjoin defendant the city of Joplin, its officers, agents and servants, from exercising municipal authority in section 22, and the west half of section 23, township 27, range 33 of Newton County. The city of Joplin by its old limits was situated wholly in Jasper County. But it assumed jurisdiction in 1929 over the adjacent section 22 and the west half of section 23 in Newton County under authority of Ordinance No. 15162 with the consent of the legal voters of the city, extending the municipal boundaries so as to include the adjacent Newton County land and also certain other adjacent land in Jasper County. Joplin is a city of the second class and it made the annexations of 1929 under the provisions of Section 6483, Revised Statutes 1929 (8 Mo. Stat. Ann., p. 5476).

This is the latest of several cases which have presented to the appellate courts the question of the validity of the Joplin annexation proceedings of 1929. The most recent decision was by this court in the case of State ex inf. Mallett ex rel. Womack et al. v. The City of Joplin, 332 Mo. 1193, 62 S. W. (2d) 393. This was an appeal by the city from a judgment of the Circuit Court of Jasper County in a *quo warranto* action ousting the city from jurisdiction over the Jasper County land annexed in 1929. The appeal in the *quo warranto* action went to the Springfield Court of Appeals which by its majority opinion reversed the judgment of ouster. [52 S. W. (2d) 602.] But upon the request of a dissenting judge, the Springfield Court of Appeals transferred the appeal to this court. Our decision also sustained the validity of the annexation proceedings with respect to the Jasper County land, and we accordingly reversed the trial court's judgment of ouster. [332 Mo. 1193, 62 S. W. (2d) 393.] Reference is made to a plat of the city of Joplin, showing the annexations of 1929, including section 22 and the west half of section 23 in Newton County, which is the land involved in this appeal. The plat:

is published as part of the opinion of this court in the *quo warranto* case in 332 Mo. 1193, 62 S. W. (2d) at page 394.

The validity of the annexation proceedings as to the Newton County land which is involved in this appeal was brought into question in the case of Schildnecht v. City of Joplin, 327 Mo. 126, 35 S. W. (2d) 35, and (same case, Mo. App.), 41 S. W. (2d) 590. The Schildnecht case was an injunction suit in the Circuit Court of Jasper County, to enjoin the exercise by the city of Joplin of municipal authority over the Newton County land. The trial court sustained a demurrer to the bill. The plaintiffs having declined to plead further the court gave final judgment for the defendants. Schildnecht and his co-plaintiffs appealed to this court, which held that it was without jurisdiction (327 Mo. 126, 35 S. W. (2d) 35) and transferred the case to the Springfield Court of Appeals. The latter court affirmed the judgment of the Jasper County Circuit Court in favor of the city of Joplin and the other defendants. [41 S. W. (2d) 590.]

I. Plaintiffs assign error to the action of the trial court in permitting defendant, city of Joplin, to plead and also to offer record evidence in proof of the defense of estoppel by the judgment in the Schildnecht case, supra. The answer of defendants in the instant case set up that the judgment of the Circuit Court of Jasper County in the Schildnecht case upheld the lawfulness and validity of the extension ordinance as to the Newton County land annexed and that plaintiffs here, as citizens, property owners and taxpayers, in the annexed portion of Newton County, in common with the plaintiffs in the Schildnecht case and by mutuality of interest, by representation in the same subject, cause of action and issues, and by reason of a common public interest, were estopped by the Schildnecht judgment from instituting or maintaining this action.

Plaintiffs contend that the judgment in the Schildnecht case is not a bar to their action because the issues in both suits are not the same and the parties are not identical. In support of this proposition, they cite Missouri, Kansas & Texas Railway Co. v. American Surety Co., 291 Mo. 92, 236 S. W. 657; Loud v. St. Louis Union Trust Co., 298 Mo. 148, 249 S. W. 629. The Missouri, Kansas & Texas case does state the rule to be that, for the successful interposition of the defense of *res adjudicata* there is necessary identity of the thing sued for, of cause of action and of parties.

The plaintiffs in the Schildnecht case and in this one are not identical. In fact no plaintiff in either case is a party to the other. But the plaintiffs in each case sued as resident taxpaying citizens of the annexed Newton County land. In the Schildnecht case, by inference, in the instant case in express terms the plaintiffs pleaded that the purpose of the suit was to avoid a multiplicity of actions. And both suits were prosecuted on behalf of the plaintiffs and of all other

persons similarly situated, that is residents of the Newton County land, for all of whom each bill prayed relief. Plaintiffs, F. J. Powell and R. R. Ristine in the present suit were resident taxpayers in the annexed Newton County land when the Schildnecht case was commenced and while it was being prosecuted. Newton County, which upon its motion was made a party plaintiff in this suit as an owner in fee simple of land in the annexed territory, was such owner while the Schildnecht case was in course of litigation. The defendants in the Schildnecht case were the city of Joplin, its mayor, commissioners, clerk and chief of police. The sole defendant in the instant case is the city of Joplin.

Both actions were suits in equity to enjoin the enforcement of the extension ordinance in the annexed part of Newton County and to restrain the officers of Joplin from enforcing in that territory the laws, ordinances and regulations of Joplin and from molesting or interfering with any of the residents of Newton County. The main issue raised by each bill was whether so much of the extension ordinance as attempted to annex the Newton County land was void and whether the officials of the defendant city, by their exercise of authority in Newton County, were trespassers. In the Schildnecht case, the plaintiffs, by their petition, caused the main issue to turn upon the question whether Section 6483, Revised Statutes 1929, under which the annexation ordinance was enacted and ratified, authorized a city of the second class to annex adjacent land in an adjoining county. The trial court, by sustaining a demurrer to the petition in the Schildnecht case and by giving final judgment upon that demurrer, when plaintiffs refused to plead further, decided the issue in favor of the defendant city.

In the instant case, the plaintiffs by their amended petition presented the main issue by charging: First,—that the extension ordinance insofar as it concerns the Newton County land, is unconscionable, oppressive, unreasonable and unjust, and therefore void, because the land is agricultural, and unprepared and not fit for urban uses. Second,—that the annexation ordinance violates the Fourteenth Amendment of the Constitution of the United States and Section 30, Article II of the Constitution of Missouri, in that it constitutes a taking of private property without due process of law, by means of municipal taxes. Third,—that the statute authorizing the annexation proceedings is unconstitutional for the same reasons, and for the further reason that the statute sanctions an invasion of the "sovereign rights" of Newton County by the defendant city. This last stated ground of unconstitutionality appears to have been the basis for a reargument upon this appeal of the question, decided by the Springfield Court of Appeals in the Schildnecht case, whether the statute in fact sanctioned the annexation of adjacent land in another county.

In the Schildnecht case constitutional questions were presented to

the trial court by defendants' demurrer. That pleading contended: First,—that the annexation statute under which the extension ordinance was passed is a general statute not restrained in nor prohibited by the State Constitution, and being in accordance with Section 7, Article IX of our Constitution relating to cities and towns, their organization and classification. Second,—if the trial court denied to the city of Joplin the right to extend its boundaries across a county line such action would create different rules of law under the annexation statute for the extension of boundaries of different cities within the second class, in violation of Section 7, Article IX, and of Subdivision 2, Section 53, Article IV of the Constitution. Third, —that under the constitutional provisions last cited and under the annexation statute the extension of the boundaries of the city of Joplin is a purely legislative question. The demurrer also charged that the petition in the Schildnecht case did not state a cause of action.

It thus appears, first, that the plaintiffs in the Schildnecht case in their suit represented the plaintiffs in the instant case as persons similarly situated; second, that both suits were of the same nature, seeking injunctive relief and raising the same issue; third, that the defendants in the first suit were the city of Joplin and its officers, and in the other city of Joplin, alone; fourth, that the trial court, by sustaining the demurrer to the petition in the Schildnecht case in effect held that the annexation ordinance and the applicable statute were constitutional in the respects pleaded. It is equally clear that there is not in the two cases that identity of parties required by the rule of *res adjudicata* laid down in Railway Co. v. Surety Co., supra, and that the main issue of the validity of annexation is cast upon different lines in each case.

It is our view that the strict rule stated in Railway Co. v. Surety Co., supra, an action at law, is not applicable to an equity case of this nature.

This court in the case of Consolidated School District No. 4 of Greene County v. Day, 328 Mo. 1105, 43 S. W. (2d) 428, quoted from 34 Corpus Juris, 1028, a statement of doctrine which appears to be in point here. The statement is as follows (34 C. J. 1028):

"In the absence of fraud or collusion, a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens, and taxpayers in respect to matters adjudicated which are of general and public interest, such as questions relating to public property, contracts, or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county, or district, or board or officer representing it, it being held that all other citizens and tax-

payers similarly situated are represented in the litigation and bound by the judgment, in the absence of fraud or collusion. The rule is applicable to persons who have notice of the suit, and even to persons without actual notice of the pendency of the suit.''

A Missouri case cited by Corpus Juris in support of this statement of the law is State ex rel. Wilson v. Rainey, 74 Mo. 229. This was a suit by a county collector for delinquent taxes against certain defendants against whom taxes had been assessed for the payment of a judgment of the United States Circuit Court in favor of one Davis against Greene County, Missouri, upon interest coupons upon bonds which the county had issued in aid of a railroad. With reference to *res adjudicata* this court said, l. c. 235:

''It has been argued by counsel with much plausibility and ability, that plaintiff is not bound by the judgment rendered in the case of Davis against Greene County, or the judgment rendered in the mandamus proceeding to compel the county court to pay, because he was not a party *eo nomine* in either proceeding. We have not been able to find, nor have we been cited to any authority sustaining this position of counsel. On the contrary, all the authorities we have examined touching this point overthrow the position. In the case of Clark v. Wolf, 29 Iowa, 197, the precise question was considered at length, and it was there held that a judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof though not made parties defendant by name. This we think is so both on principle and authority, for in suits of the character mentioned the legally constituted representatives of the county stand in the place of each citizen of the county who is liable to be called on as a taxpayer to contribute his proper proportion to liquidate the demand which a judgment may establish.'' These principles should apply with equal force to a judgment in favor of a municipal corporation involving its jurisdiction over annexed land. There was not in this case any suggestion of fraud or collusion in the procurement of the judgment in the Schildnecht case. And the record of that case would not sustain such a suggestion if made.

Harmon v. The Auditor of Public Accounts of the State of Illinois. 123 Ill. 122, is a leading case on the questions involved in this assignment of error. The plaintiffs, resident property owners and taxpayers in the town of Mount Morris, County of Ogle, Illinois, brought suit against the State Auditor of Public Accounts and also the treasurer and clerk of the county, the collector of the town and the holders of an issue of bonds, charging that the bonds were void for want of power of certain officers to issue the same and praying that the bonds be decreed null and void and the officers enjoined from collecting

any taxes to pay them from the property of the plaintiffs and the other taxpayers of the town. The defendants by answer denied the charges of the bill and set up among other defenses the defense of *res adjudicata.* The circuit court dismissed the bill for want of equity and the decree was affirmed by the appellate court of Illinois. From the latter court the case went by appeal to the Supreme Court of Illinois, which also affirmed the judgment. The statement of facts shows that the same indebtedness involved in the Harmon case was passed upon by the Supreme Court of Illinois in the case of Chicago and Iowa Railroad Co. v. Pinckney, 74 Ill. 277. The plaintiffs in the Pinckney case filed their bill on November 11, 1871. They were not identical with the plaintiffs in the Harmon case who filed their bill on April 28, 1882. The defendants in the Pinckney case were the Chicago and Iowa Railroad Company, the town of Mount Morris and the town supervisor and town clerk of Mount Morris. The Pinckney suit was to enjoin the town and those officers from issuing bonds to the railroad company in the sum of $75,000. The Harmon case was to enjoin the officers there named from issuing bonds to the amount of $50,000 which by compromise were to be in lieu of the originally authorized issue of $75,000. The following extracts from the opinion in the Harmon case are helpful in the instant case (123 Ill. l. c. 129):

"The defendants set up the former proceedings in the Pinckney suit, as a bar to the relief sought by the present suit.

"Both the Chicago and Iowa Railroad Company and the town of Mount Morris were parties to the Pinckney suit. In that suit it was decided that the town had the power to issue the bonds, and that the railroad company was entitled to have them issued in pursuance of the vote taken and by reason of its compliance with the conditions exacted of it. The decision so made was final and binding as between the railroad company and the town, and, as between them, established the validity of the bonds. If the bonds had been issued and suit had been brought on them by the company against the town, it will not be claimed that the latter could have defended on the ground that the election, in pursuance of which the bonds were issued, was invalid. . . .

"It is claimed, however, that the Pinckney suit is to be regarded as a controversy between the complainants therein on one side and the defendants therein on the other side, and not merely as a controversy between two of the defendants, the railroad company and the town. In this view, it is urged that the decree in that suit cannot be pleaded as a former adjudication in the present suit, for the reason that the complainants there were not the same persons as the complainants here. The proceeding instituted by Pinckney and others was a chancery proceeding. The present proceeding is also upon the chancery side of the court. Where the action is at law and a

judgment in an action at law is pleaded as a former recovery, the defense has a more restricted character than in a chancery suit.

"The Pinckney bill was filed by certain property owners and taxpayers, as representatives of a class. . . .

"The present suit was begun by Harmon and others, also taxpayers and property owners of the town, as representatives of the same class, for whose benefit the Pinckney bill was filed. The complainants in this proceeding were represented by the complainants in the former suit, and are therefore bound by the decree therein entered. The remedy in suits of the character here indicated is in the interest of a class of individuals having common rights that need protection, and, in the pursuit of that remedy, individuals have the right to represent the class to which they belong. This jurisdiction, in some respects, rests on the principles of a proceeding *in rem.*

"We, therefore, think that there is sufficient identity between the parties filing the present bill and those who filed the bill in the Pinckney case to justify the pleading of the decree entered there as *res judicata* in this case. [Authorities cited.]

"It is claimed, however, that the cause of action in the present suit is not the same as the cause of action in the Pinckney suit. . . . The opinion in the Pinckney case only discusses two points: first, whether the Constitution of 1870 prohibited a donation by a town to a railroad, where the donation was authorized by a vote of the people before the adoption of the Constitution, and second, whether the vote in favor of the Mount Morris donation was void by reason of defects in the petition for the election and in the notice of the election. As the opinion makes no reference to the point discussed in the Mallory case, as the same is above stated, counsel say that the Pinckney decision is not *res judicata* as to that point. We are, therefore, asked to set aside the bonds held by the appellees in this case, because the election, which authorized their issuance, was held at a town meeting presided over by one moderator.

"The value of a plea of former recovery is not to be determined by the reasons, which the court rendering the former decree or judgment may have given for doing so. [Authorities cited.] Nor is such former judgment or decree conclusive only as to questions actually and formally litigated. It is conclusive as to all questions within the issue whether formally litigated or not. In Beloit v. Morgan, 7 Wall. 619, it is said: 'The principle of *res adjudicata* reaches further. It extends not only to the questions of fact and of law which were decided in the former suit, but also to the grounds of recovery or defense, which might have been, but were not presented.'

"In Rogers v. Higgins, 57 Ill. 244, it was held: 'When a complainant in chancery presents his cause of action before the court, he should bring forward and urge all the reasons which then existed for its support. After a determination of the suit, the controversy can-

not be re-opened to hear any additional reason which before existed, and was within the knowledge of the party in support of the same cause of action. The principle of *res judicata* embraces not only what has actually been determined in the former suit, but also extends to any other matter properly involved, and which might have been raised and determined in it.' "

■ It is a familiar Missouri rule that a judgment is conclusive not only as to questions which were raised but as to every question which could have been raised. [Consolidated School District v. Day, 328 Mo. 1105, 43 S. W. (2d) 428, l. c. 430; Custer v. Kroeger, 313 Mo. 130, 280 S. W. 1035, l. c. 1037; Williams v. City of Hayti (Mo.), 184 S. W. 470, l. c. 473.] This principle should apply with special force to injunction proceedings, charged with a public interest as here. If we should rule that the judgment in the Schildnecht case dismissing the bill for injunction was not a bar to the bill for injunction in the instant case, we would open the doors to endless injunction suits, prosecuted by citizens of the annexed part of Newton County, and aimed at the avoidance of the effect of the annexation proceedings. This would be contrary to the axiom that it is to the interest of the State that litigation be ended. On May 21, 1929, the city council of Joplin adopted the annexation ordinance, subject to the approval of the people. On June 11, 1929, the ordinance received the assent of the citizens of Joplin and immediately became effective. Yet by litigation, a summary of which we have given, its validity is still in suspense. Successive injunction suits, even on new grounds, are not favored. 32 Corpus Juris, 74, citing Schwartz v. Siekmann, 66 So. 770, 136 La. 178, l. c. 179, which states: "The legal principle which precludes a second injunction would amount to very little if the law of which the litigant was ignorant at the time of the first injunction could serve as an excuse for urging in a second injunction the grounds that should have been urged in the first."

Our view that the judgment in the Schildnecht case was a bar to this proceeding is not changed by the fact that the judgment was upon a demurrer. For that demurrer, as we have seen, went to the merits and was not merely matter of abatement. Therefore the judgment is *res judicata*. [Johnson v. United Railways Co., 243 Mo. 278, l. c. 291, 147 S. W. 1077.] For the reasons stated, this assignment is ruled against plaintiffs.

II. Since the plea in bar upon which we have ruled was in effect a complete defense, wholly sufficient to sustain the judgment of the trial court, we will make but brief reference to the merits of the case. The record is very large. We have examined it, and we are of opinion that we may draw the same conclusion as Division Number One of this court expressed in the *quo warranto* case of State v. City of Joplin, 332 Mo. 1193, 62 S. W. (2d) 393, l. c. 400. That case con-

cerned the Jasper County land annexed in 1929, under the same ordinance which brought in the Newton County land here in question. The conclusion of this court in the *quo warranto* case was:

"We therefore hold that the evidence clearly shows that there was before the city council and the voters a question concerning the necessity of the annexation of the territory in controversy which was at least fairly debatable and about which reasonable men at least would differ, and that there was no substantial evidence to show that the action of the city in including these tracts was so arbitrary, unjust and unreasonable as to amount to abuse of the discretion which the statute delegated to it."

The judgment of the Circuit Court of Newton County in favor of defendant and against plaintiffs is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. *Ellison, P. J.,* absent; *Tipton,* Acting *P. J.,* and *Leedy, J.,* concur.