Jack L. SIERK, Plaintiff-Respondent,

v.

Charles S. REYNOLDS, Defendant-
Appellant,

and

Sally K. Rice et al., Defendants.

No. 9151.

Missouri Court of Appeals,
Springfield District.

Aug. 24, 1972.

Charles C. Shafer, Jr., Howard Chamberlin, Kansas City, for defendant-appellant.

Wayne T. Walker, Walker & Salveter, Springfield (Mayte Boylan Hardie, Springfield, on the brief), for plaintiff-respondent.

HOGAN, Judge.

This is a suit on a special tax bill issued by the City of Springfield, a constitutional charter city, against the property of defendant Charles S. Reynolds for the cost of constructing sanitary sewers. Trial to the court has resulted in a judgment in favor of the plaintiff and against the defendants, and defendant Charles Reynolds has appealed.

The appellant, to whom we shall refer as the defendant, owns a tract of land (approximately 27 acres) located in a predominantly industrial area in the northwest part of the City of Springfield. Early in 1966, inferably in response to some request or petition, the city directed its city manager and its Public Works Department to prepare a preliminary report in connection with the construction of sanitary sewers "in the area of but not restricted to" property located on both sides of the St. Louis-San Francisco Railway between East Trafficway and Blaine Street. On April 11, 1966, the council received a report on the investigation it had ordered. By resolution the council found the report acceptable and directed its Public Works Department "to proceed with such engineering as may be necessary in order to prepare plans and specifications for the construction of sewers in this area." On June 20, 1966, the city manager was authorized to enter into a "pipe line contract or contracts" with the St. Louis-San Francisco Railway in order to facilitate the construction of the sewers. On July 5, 1966, the city by ordinance redefined the boundaries of its Joint Sanitary Sewer District No. 121 of Section No. 2 of the main sewers to include defendant's property. On August 15, 1966, by resolution the city declared it necessary to construct joint sanitary sewers in Joint Sanitary Sewer District No. 121. This resolution: 1) stated the necessity for construction; 2) stated the proposed method of payment; 3) referred specifically and by number to plans, specifications and an estimate of cost on file; 4) provided that all costs of construction, including incidental costs, were to be paid by special tax bill issued against all the property in the joint sewer district "in proportion to the square footage of said property," and 5) provided that notice of the resolution be given by publication and by posting. No question was raised in the trial court, nor is any raised here, concerning the propriety of declaring the work necessary by resolution, nor is the sufficiency of publication in issue.

Defendant's evidence was that on the day this resolution was passed, he attempt-

ed to file a remonstrance, but was not allowed to do so because the remonstrance was not notarized. The defendant then either prepared or had prepared a second protest in writing, which is as follows: `

"We, the undersigned, represent parties of Joint Sanitary Sewer District No. 121 of Section 2 in the City of Springfield, Missouri. We again petition the city council to remove us from the sewer district. Most of us have spent many years of our lives in the present district. Some of our acreages have been in our families for generations.

"Our acreages have been annexed by the city, zoned industrial, and now have proposed against them a levy, a special tax to pay for joint sanitary sewers to service the new factories recently or now being built in the sewer district.

"The proposed Estimate of Cost No. 3341–S on file in the office of the Director of Public Works of Springfield, Missouri is in excess of $100,000. Allocation of the tax by proportion of *all* (sic) acreage in the district means residents will pay a large proportion of the construction cost. Such a tax is an undue, unfair financial burden upon residents.

"The city council has declared the construction of the proposed sewer necessary in its August 15, 1966 meeting. The sewer may be necessary for factories—but it is not necessary for residents. Most residents already have septic tanks.

"It is unethical to twist the present law which was designed for residential areas with small lots to our unsubdivided acreages. For this reason we again petition the city council to remove us from the burden of paying for sewers we don't need and for which we are not ethically liable."

This remonstrance is signed by Charles S. Reynolds, Beatrice Reynolds, John M. Reynolds, Elizabeth Mason, Sherman Bradley, Gladys I. Bradley, Ronald G. Rice, Sally K. Rice, Bonny Loftis, Doin Loftis, Anthony J. Kaisler, Erma E. Kais-

ler, Milton G. Smart, Betty L. Smart, Ada J. Reynolds, Madge Cunningham and Roy E. Reynolds. According to defendant's testimony, only four of the signatories owned property in the redefined joint sewer district. Others, unspecified, were identified as occupants of rent homes and mortgagees.

The defendant further testified that he attended the August 22, 1966 meeting of the Springfield City Council and filed the quoted remonstrance. "Very little was said", but "[t]here was hands raised." None of the remonstrators addressed the council, because, as defendant put it, "[w]e had our petition over there to state our cause." The defendant raised his hand against the sewer, because he "didn't want to hold back progress", but "wanted to be taken out of the district".

On August 29, 1966, the city council by ordinance adopted the specific plans and cost estimate prepared by its Director of Public Works, again declared it necessary for sanitary purposes to construct joint sanitary sewers in Joint Sanitary Sewer District No. 121, and provided that all costs of construction were to be paid by special assessment levied against all the property in the district. The ordinance further provided for the issuance of special tax bills payable in five equal annual installments. On September 12, 1966, the city accepted the bid of the Hedges Construction Company to construct the sewers and authorized its city manager to enter into a contract for their construction.

On September 16, 1966, the defendant and four other landowners whose land had been included in the redefined joint sewer district filed an action in the Circuit Court of Greene County, seeking to enjoin the city from including their tracts in the redefined district. Defendants and others as plaintiffs alleged, among other things, the existence and corporate capacity of the city; the definition or redefinition of the boundaries of the joint sewer district and the inclusion of plaintiffs' property there-

in; the resolution by the city that construction of sewers was necessary and that the proposed estimate of cost was in excess of $100,000. Plaintiffs recited their filing of a remonstrance and alleged that they were never afforded a hearing on it; they further alleged that they had been informed that the sewer would be paid for by levy of a special assessment, and that the proposed levy was $.0084 per square foot. The plaintiffs further averred that officials of the city had advised them that their properties could be excluded from the joint sanitary sewer district, but had refused to do so; that the construction of sanitary sewers as proposed was in fact unnecessary because each plaintiff had an existing, adequate and properly functioning septic tank, and that the city's action in including plaintiffs' properties was oppressive because of its cost, and was capricious, unreasonable, and discriminatory in that the sole purpose for the construction of the sewers was to serve industrial users thereof at an unreasonable cost to the plaintiffs. Plaintiffs prayed the court to enjoin the city from including them in the joint sanitary sewer district and for general equitable relief. Upon the city's motion, this petition was dismissed after oral argument for failure to state a claim upon which relief could be granted, as provided by Rule 55.33.[1] Plaintiffs filed an amended petition, in substance the same as the first, except that the prayer of the petition was to require the city to contribute to the cost of construction, and this petition was also dismissed for failure to state a claim upon which relief could be granted. No appeal was taken from the order dismissing the amended petition.

---

1. All references to statutes and rules are to R.S.Mo. (1969), V.A.M.S. and V.A.M.R., except where otherwise noted.

Section 10.5. Proceedings relative to improvements.

The council shall by general ordinance provide the procedure for initiating improvements, letting of contracts therefor, the method of levying assessments to pay for the same and the issuance and enforcement of special tax bills to pay for the same for any public improvements which are to be paid for in whole or in part by special tax bills upon real property, or by use of the public improvement fund, as in this Charter provided, reimbursed by the collection of said tax bills, which said tax bills shall be a lien against the property subject to such special assessment.

Section 10.6. Notice of public improvement and remonstrances.

Such general ordinance shall provide that notice of the necessity of any such improvement as determined by the council and of the proposed method of payment and reference to any plans and specifications and an estimate of cost thereof shall be published in some daily newspaper printed in the city for five consecutive issues, and at the same time the city shall cause not less than three copies of the issue to be posted in conspicuous places within the limits of the proposed improvements.

If a majority of the resident owners of the property liable to taxation therefor, at the date of the initiation of such improvement, who shall also own a majority of the front feet owned by the residents of the city abutting on the highway or sidewalk or parts thereof proposed to be improved, do not within ten days after the completion of said publication file with the city clerk their protest against such improvements, the council may proceed in accordance with the terms of the ordinance herein provided with such improvements.

Section 10.7. Finding of council to be conclusive.

When the council shall by ordinance find and declare that a majority of the resident owners of the property liable to taxation therefor, who shall also own a majority of the front feet owned by residents of the city abutting on the improvements or part thereof proposed to be made, have not filed with the city clerk a valid protest against such improvement, such finding and declaration shall be conclusive, after the execution of the contract for said improvement, and thereafter no special tax bill or special assessment shall be held invalid for the reason that a protest sufficiently signed was filed with the city clerk. All county or other public property and all cemeteries and tax exempt properties and railroad rights of way shall, for the proportionate frontage, be subject to the liens of the special tax bills authorized by this Charter.

Thereafter, construction of the sewers was completed and on February 22, 1967, the city levied a special assessment against all the property in the district to cover the cost of construction. Defendant was assessed the sum of $7,400.70 and the special tax bill here in controversy was issued on February 26, 1967. It was assigned for value to Mr. Sierk, the plaintiff in this action. No payment was made upon the bill, and on April 28, 1970, this action was commenced. As noted, the case was tried to the court sitting without a jury, but no findings of fact were requested and the case was decided without any indication of the theory upon which the trial court acted. We therefore take the appeal as presented, but must affirm the judgment if it is correct on any theory supported by the pleadings and the evidence. Edgar v. Fitzpatrick, Mo., 377 S. W.2d 314, 318 [12]; Lossing v. Shull, 351 Mo. 342, 351, 173 S.W.2d 1, 5 [1]; McIntosh v. White, Mo.App., 447 S.W.2d 75, 78 [5].

The defendant's principal point in this court is that the city's assessment was wholly void, and the tax bill sued upon is therefore invalid, because the city did not follow and comply with its charter provisions concerning public improvements. The charter provisions specifically in issue are Sections 10.5, 10.6 and 10.7 of the Springfield City Charter as amended in 1955. They are set out verbatim marginally. The defendant's position, as we follow his brief and oral argument, is that the generic term "improvements" as used in Sections 10.5, 10.6 and 10.7 includes sewers; therefore, Section 10.6, properly construed, grants property owners affected the right to remonstrate against the construction of sewers as well as all other public improvements. Further, the defendant argues, Section 10.7 mandatorily requires the council to canvass the remonstrance and to find, by ordinance, that the remonstrance is not a valid majority remonstrance before it authorizes the improvement and provides a method of payment; otherwise the whole proceeding is void. In support

of these contentions, defendant cites Doemker v. City of Richmond Heights, 322 Mo. 1024, 18 S.W.2d 394; Municipal Securities Corp. v. Moriarty, 195 Mo.App. 579, 193 S.W. 892; and Buckley v. City of Tacoma, 9 Wash. 269, 37 P. 446, all of which do indeed hold that the validity of tax bills depends exclusively upon a substantial adherence to the method and procedure prescribed by the legislation authorizing the particular work and a similar adherence to the power granted the city to legislate thereon. The plaintiff answers this contention with a rather involved argument concerning the proper construction of Sections 10.5, 10.6 and 10.7 of the Springfield City Charter, and strenuously insists that whatever the correct construction of those sections may be, the issues raised by the defendant with respect to the validity of the tax bill sued on are foreclosed by the judgment rendered in the injunction suit. While it is not necessary to rule on the matter, our study of the origin and history of Section 10.6 has led us to the conclusion that it does indeed give the property owners affected a right of remonstrance against the construction of sewers as well as street improvements. In our view, a sewer or drain is an "improvement", Allen v. Jackson County Savings & Loan Ass'n, 232 Mo.App. 1098, 1100, 115 S.W.2d 7, 9; Williams, Belser & Co. v. Rowell, 145 Cal. 259, 78 P. 725, 726, and although Section 10.5 of the original charter excepted the construction, repair or maintenance of sanitary sewers from the requirement of notice and right of remonstrance now provided in the present Section 10.6, that exception was deleted when the charter was amended in 1955.

However that may be, we agree with plaintiff that the issues raised in this action concerning the city's compliance with its charter are res judicata under the doctrine sometimes referred to as that of "virtual representation". Plaintiff cites Drainage District No. 1 Reformed of Stoddard County v. Matthews, 361 Mo. 286, 234 S. W.2d 567, in which that doctrine was ap-

plied in a somewhat similar situation. In that case, the drainage district and certain landowners and taxpayers residing therein sought to enjoin payment of certain drainage district warrants on the grounds, among others, that the county court had not complied with the statutory provisions authorizing it to levy the maintenance tax necessary to provide funds to pay the warrants, and the levy was therefore unlawful. It appeared that prior to the filing of the injunction suit, the Bank of Advance in Stoddard County, Missouri had filed its petition in 84 counts (each count seeking judgment upon a separate warrant) seeking judgments on some of the then unpaid warrants which the drainage district had issued. The defendants in the suit brought by the Bank of Advance were the Drainage District No. 1 Reformed of Stoddard County, plaintiff in the injunction suit and the then three members of the county court. The Bank of Advance had judgment by default and recovered upon the unpaid warrants. The defendants in the injunction suit (the second action) maintained that the drainage district and the individual plaintiffs were estopped and that the judgment in the Bank of Advance case was res judicata as to all residents and taxpayers in the district. The court agreed, stating the law to be, 361 Mo. at 302–304, 234 S.W.2d at 573–574 [11] [12, 13], that: "In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local governmental agency or district, or a board or officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations. The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of fraud or collusion. The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit. . . . The rule just . . . stated is founded upon basic concepts of privity and virtual representation. The doctrine of virtual representation, well recognized in equity, is based upon considerations of necessity and paramount convenience and may be invoked to prevent a failure of justice. Brown v. Bibb, 356 Mo. 148, 201 S.W.2d 370, 374. The doctrine is applicable if . . . the interest of the represented and the representative are so identical that the inducement and desire to protect the common interest may be assumed to be the same in each and if there can be no adversity of interest between them. . . . And under the principles of that rule 'privity' depends more upon the relation of the parties to the subject matter than upon their connection as parties with or any activity in the former litigation. Generally speaking, privies are those legally represented at the trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment." This rule, or principle, has been applied to proceedings in quo warranto to test the validity of charter amendments extending the boundaries of constitutional charter cities, Hixson v. Kansas City, 361 Mo. 1211, 239 S.W.2d 341, to an injunction suit challenging the extension of municipal boundaries, Powell v. City of Joplin, 335 Mo. 562, 73 S.W.2d 408, and to a mandamus action compelling a county to levy and collect a tax. State ex rel. Wilson v. Rainey, 74 Mo. 229. In other jurisdictions the same principle has been applied in a variety of situations reasonably similar to the case at hand[2] and we are

2. See, e. g., Howard-Sevier Road Imp. Dist. No. 1 v. Hunt, 166 Ark. 62, 265 S.W. 517, 519–521[1][2]; Floersheim v. Board of Com'rs of Harding County,

convinced that it is broad enough to apply and should be applied here.

 To be more specific, it is obvious that the matter to be adjudicated here—the right of the City of Springfield to construct sanitary sewers and to impress a lien upon the property of the landowners thereby benefited—is a question of general public interest. And, contrary to the defendant's views, the judgment rendered in the injunction suit was a final determination on the merits. As certified to us, the record shows that both petitions for injunction were dismissed upon the city's motion to dismiss for failure to state a claim upon which relief could be granted. Such motions go to the merits of the action, and the judgment granting the second motion was a final determination upon the merits. Powell v. City of Joplin, supra, 335 Mo. at 571, 73 S.W.2d at 412 [6]; Johnson v. United Rys. Co. of St. Louis, 243 Mo. 278, 290–292, 147 S.W. 1077, 1079–1080 [4]. Moreover, the record shows that at the time the second or amended petition was filed on October 25, 1966, the city council had, by its resolution of August 15 declared the improvement to be necessary, had found the estimated cost of the improvement to be $106,850.00 and had declared its intention to finance the improvement by the issuance of special tax bills. On August 22 it had received and considered the remonstrance signed by the defendant and others. By ordinance enacted on August 29, 1966, the city adopted the specific plans for the improvement which had been prepared for the city manager, again declared the improvement necessary, and specifically and in detail authorized the levy of a special assessment and payment for the improvement by the issuance of special tax bills, prescribing the terms of those bills. On September 12, 1966, the council had, by ordinance, authorized its city manager to accept the bid of the Hedges Construction Company for the con-

struction of the sewers. All these facts were, or easily could have become known to the defendant when the amended petition was filed, and if the city had in fact disregarded its own charter by failing to heed the remonstrance filed, or by failing to canvass the remonstrance the legal issues thereby raised were ripe for adjudication and could have been pleaded. It is therefore of no significance, so far as the last order of dismissal is concerned, that the issues tendered here were not specifically pleaded and tendered in the amended petition for injunction; they were questions which might have been raised, and the rule in this state is that a judgment is conclusive not only as to questions which were raised, but as to every question which could have been raised. Powell v. City of Joplin, supra, 335 Mo. at 571, 73 S.W.2d at 412 [3]; State ex rel. Farmer v. Allison, Mo.App., 359 S.W.2d 245, 246–247 [2, 3]. Further, it is of no consequence that the orders dismissing the two petitions for injunction may have been erroneous; the plaintiffs did not appeal from the final order of dismissal, and the bar of res judicata applies to erroneous judgments as well as to those free from error. Payne v. St. Louis Union Trust Company, Mo., 389 S. W.2d 832, 836 [2]; N. W. Electric Power Coop., Inc., v. American M. Ins. Co., Mo. App., 451 S.W.2d 356, 365 [13]; Owen v. City of Branson, Mo.App., 305 S.W.2d 492, 497 [3]. As far as the necessary "privity" is concerned, we are in no doubt that Mr. Sierk's interest in this action and that of the City of Springfield in the injunction case are identical, if not coextensive. The right or interest which the city sought to protect and enforce in the injunction case was its right to impress a special lien upon the property located in the special sewer district; in this action, the plaintiff seeks to enforce that same right with respect to defendant's property. We are not impressed with defendant's contention that since he objected to the introduction of the

28 N.M. 330, 212 P. 451, 453–454[1] [2][3][4][5]; Ashton v. City of Rochester, 133 N.Y. 187, 30 N.E. 965, aff'd on

rehearing 31 N.E. 334; Annot., 64 A.L.R. 1262, 1263–1265 (1929).

case files in the injunction suit, those files should not have been received in evidence; the injunction case was adjudicated in the selfsame court in which this case was tried, and upon the plaintiff's plea of res judicata, asserted in his reply, it was perfectly proper for the trial court to take judicial notice of its own records when they were offered in evidence. Arata v. Monsanto Chemical Company, Mo., 351 S.W.2d 717, 721 [5]; see also Se-Ma-No Electric Cooperative v. City of Mansfield, Mo.App., 321 S.W.2d 723, 727–728 [1–3]. We need not prolong the discussion of this point; we believe, and hold, that the matters raised by the defendant concerning the city's compliance with its charter were foreclosed in this action by the judgment rendered in the injunction suit.

 The defendant further asserts that the assessment, in his case, was grossly oppressive, because he was forced to pay for a sewer which he did not receive. He cites no authority to this point, and we would be justified in regarding it as abandoned, Rule 84.04(d); Kratzer v. King, Mo., 401 S.W.2d 405, 408 [5]; Lomax v. Sawtell, Mo.App., 286 S.W.2d 40, 42–43 [4], but on its merits, defendant's complaint seems to be that his property was in no way benefited by the improvement. The record does not support this contention. It is quite true that as originally planned, the sewer would have extended across the defendant's tract, rather than merely to the edge of it on the south, but the testimony of the assistant city engineer was that the sewer was redesigned before passage of the ordinance finally authorizing construction and before the contract for construction was let. In our view, this issue is among those concluded and foreclosed by the judgment in the injunction suit, but if not we consider it to be without

merit. There is no showing whatever that the cost of extending the sewer onto the defendant's property was included in the assessment finally levied, and in our opinion, the defendant does derive a special benefit from the sewer, since it is so situated and constructed that connection therewith can be made when and if the defendant so desires. Bennett v. City of Emmetsburg, 138 Iowa 67, 115 N.W. 582, 589 [21].

The defendant's final point is that the special tax bill here involved is within the purview of Section 516.130, the general three-year statute of limitations,[3] and plaintiff's recovery is therefore barred. Answering this point as presented, plaintiff maintains that the general five-year statute of limitations, Section 516.120,[4] is applicable.

 Here, it seems to us that both parties are somewhat wide of the mark. Defendant's point is based principally upon the assumption that the interest allowed in the bill is a "penalty" within the meaning of Section 516.130. However, the ordinance upon which this special tax bill is based, passed August 29, 1966, provided it would bear interest at the rate of 6% per annum on the unpaid balance from the date of issuance. The 6% was not any part of the compensation for the work done; it was simply interest, compensation for the use of the contractor's money after it was due and payable. The provision for interest was authorized by the charter and the ordinance levying the special assessment, and did not constitute a penalty. Austin v. Dickey, 320 Mo. 682, 689, 9 S.W.2d 593, 594 [2] [3] [4]; City of Boonville ex rel. Cosgrove v. Stephens, 238 Mo. 339, 357–358, 141 S.W. 1111, 1117 [12]. Plaintiff's contention that the 5-year statute of limitations applies might be sus-

_____

3. Section 516.130, par. 2, provides: "[a]n action upon a statute for a penalty or forfeiture, where the action is given to the party aggrieved, or to such party and the state," must be brought within three years.

4. Section 516.120, par. 2, provides that "[a]n action upon a liability created by a statute other than a penalty or forfeiture" must be brought within five years.

tained if the special tax bill were founded upon a statute which did not expressly limit the life of the lien of the bill. St. Louis County ex rel. Scott v. Marvin Planing Mill Co., 228 Mo.App. 1048, 1052, 58 S.W. 2d 769, 770 [1]; Pleadwell v. Missouri Glass Co., 151 Mo.App. 51, 63–64, 131 S.W. 941, 945; Turner v. Burns, 42 Mo.App. 94, 96 [1]. The duration of the lien of a special tax bill and the manner of enforcing that lien are, however, matters which may be regulated by charter provision and the charter provision will be regarded as controlling provided it is specific and not directly in conflict with some general statute regulating the same subject. Schwab v. City of St. Louis, 310 Mo. 116, 142, 274 S. W. 1058, 1066 [13] [14]; Stanton v. Thompson, 234 Mo. 7, 11, 136 S.W. 698, 699; Pleadwell v. Missouri Glass Co., supra, 151 Mo.App. at 63, 131 S.W. at 945. Section 10.16 of the Charter of the City of Springfield states that the council may, by ordinance, provide for the issuance of special tax bills, the manner of collection thereof and all matters incidental thereto. That part of General Ordinance 1013 encoded as Section 19–13 of the City Code of the City of Springfield provides that every special tax bill issued by the city in payment of public works constructed shall be a lien against the property therein described from the date of its issuance, which lien shall continue for a period of six years thereafter, unless otherwise provided by special ordinance. The ordinance levying the special assessment here involved set out the terms of payment of the bill and provided for the payment of interest as noted above. Without going into elaborate detail, it is not demonstrable in this case that the charter provisions and ordinances upon which this special tax bill are founded are in conflict with any of the several general statutes which *might* have applied to the City of Springfield in 1966. The lien of this special tax bill commenced on the date of its issuance, February 26, 1967. Suit was filed April 28, 1970, well within the life of the lien. Defendant's contention that plaintiff's recovery was barred by limitation is without merit.

Upon the record presented, we cannot say that the judgment appealed from is clearly erroneous for any reason developed in this court, and accordingly the judgment is in all respects affirmed.

TITUS, C. J., and STONE, J., concur.