J. J. Schildnecht, L. H. Higginbotham, Charles Schaffer, Darr W. Smith and J. W. Freeman, Appellants, v. City of Joplin, Charles A. Patterson, Beauford F. Herron, R. L. Jefferies, Orville P. Mahoney, Moses B. Harutun, Maude E. Fones and Bert Blizzard, Respondents.—41 S. W. (2d) 590.

In the Springfield Court of Appeals. August 14, 1931.

*James E. Slater, W. H. Foulke* and *Charles L. Henson* for appellants.

*R. A. Pearson, Norman A. Cox* and *Hugh Dobbs* for respondents.

SMITH, J.—This case is based upon the following verified petition, caption, signature, and affidavit, omitted:

"Plaintiffs for cause of action state that they are resident tax paying citizens of the following described territory, to-wit:

"All of section 22, and the west half of section 23, township 27, range 33, in Newton county, Missouri; that the defendant Charles A. Patterson is the duly elected, qualified and acting mayor of the city of Joplin, that Beauford F. Herron is the duly qualified and acting Commissioner of Revenue of the city of Joplin, that the defendant R. L. Jefferies is the duly qualified and acting Commissioner of Public Property and Public Utilities, that the defendant Orville P. Mahoney is the duly qualified and acting Commissioner of Streets and Public Improvements, and that the defendant Moses B. Harutun is the duly qualified and acting Commissioner of Health and Sanitation, that the defendant Maude E. Fones is the duly

qualified and acting city clerk, and that Bert Blizzard is the duly qualified and acting chief of police.

"Plaintiffs state that at one time the city of Joplin was a municipal corporation existing as a city of the third class, that by increase in population it was entitled to become a municipal corporation of the second class, and that by proper proceedings the said city of Joplin became a municipal corporation of the second class, organized under article 3, chapter 72, Revised Statutes of Missouri 1919, and amendments thereto applying to cities of the second class; that at all times prior to the acts herein complained of all the territory within the city limits was wholly and solely located in Jasper county, Missouri, and that said city of Joplin acting by and through its said council, on May 21, 1929, caused to be enacted and adopted a city ordinance, same being ordinance No. 16162, and duly signed by the mayor of said city, whereby it undertook to extend the limits so as to include the territory above described, located in Newton county, Missouri, and which said ordinance is in words and figures as follows:

"Council Bill No. 16162.          "Ordinance No. 16162.

"An ordinance to extend the city limits so as to include certain territory, and to diminish said limits so as to exclude certain other territory.

"Whereas, the certain territories adjacent to the present limits of the city of Joplin as hereinafter described and proposed to be included in said limits, are to large extent platted or are adaptable therefor and are of enhanced value and subject to be held for town uses, and include settled communities representing the growth of the city beyond its present limits, and are needed to meet new and expanding conditions, for extension of street and sewer improvement systems, for fire protection, judgment and discretion of the council the extension of the limits and boundaries of the city to include said territories would redound to the benefit of the city, therefore,

"Be It Ordained by the Council of the city of Joplin, Missouri, as Follows:

"Section 1 of said ordinance covers territory in the county of Jasper, Missouri, and not involved in this controversy.

"Section 2: That subject to the consent of the legal voters, the present limits of the city of Joplin, Missouri, be extended over the territory adjacent thereto and so as to include same within the territorial limits of the city as extended, described as follows, to-wit:

"All of section 22, and the west half of section 23, township 27, range 33, in Newton county, Missouri.

"Section 3: That, subject to the consent of the legal voters, the present limits of the city of Joplin, Missouri, be diminished by ex-

cluding therefrom the following described territory, as not adaptable for town uses, to-wit:

"All that territory within the present city limits, lying north of the east and west center line, and the same produced, of section 35, township 28, range 33, in Jasper county, Missouri.

"Section 2: That a special election be called and is hereby ordered to be held in the city of Joplin, Missouri, in the several voting districts in the said city, as hereinafter designated on the 11th day of June, 1929, for the purpose of submitting the questions, testing the sense of the voters on and obtaining their consent to the extensions and the diminishing of the limits of the city as set out in sections 1, 2 and 3 hereof, respectively.

"Section 3: Said special election shall be governed in all things in respect to the manner and conduct thereof by the provisions of the statutes of the State of Missouri, and ordinances of the city relating to general and special municipal elections in the city of Joplin in so far as the same are applicable and excepting as in this ordinance provided; and shall be held in the various voting places in said districts, respectively, as follows: (Enumerates voting districts and locations.)

"Section 4: The mayor by proclamation shall cause a notice, signed by him and attested by the city clerk, of said election and of the time and places of holding the same, to be advertised and published in the Joplin Globe, a daily newspaper published in the city of Joplin, Missouri, for the time and in the manner by the general ordinances provided for special elections.

"Section 5: The city clerk is hereby directed to cause to be printed suitable poll books and tally sheets for said special election for each of the several voting districts, and to prepare and cause to be printed suitable ballots to be used in said election, and the chief of police shall cause same to be timely distributed to the various voting places of the city before the opening of the polls. The number of ballots to the several voting places shall be at least equal to the number of registered voters in such voting district. The ballots shall be single containing all the propositions stated negatively and affirmatively and shall be in form as follows:

"(Submitting three propositions with squares in which to mark for or against each proposition.)

"Section 6: On receipt of the ballot the voter shall indicate his preference on all or any of the three propositions by marking a cross .(X) in the squares immediately before such several propositions, either for or against the same. A ballot thus marked in the square next the proposition entitled for shall be taken as a vote consenting to such proposition, and in the square against, as a vote dissenting therefrom. Upon marking his ballot the voter shall fold the same

so as to display the initials of the judges thereon, and deliver the same to the receiving judge.

"Section 7: The judges and clerks of said election upon closing the polls shall immediately count the ballots and certify the results of the council. An affirmative vote on any of the propositions by a majority of the voters voting thereon at such election shall have the effect of consenting to and authorizing such proposition and the same shall thereupon be in full force and effect. On the day following the election the council shall at 10 A. M. meet and canvass the returns from all the voting districts, by resolution declare the same.

"Section 8: The proposition as contained in section 1, section 2 and section 3 hereof are declared to be several and independent, and if any one or more be rejected or at any time become inoperative or found invalid such contingency shall not affect the validity of the remaining provisions of this ordinance. The council hereby declares its intention to be to enact and submit each of the propositions one, two and three and all the other provisions hereof irrespective of any one or more of said propositions being rejected or declared invalid.

"Section 9: Because conditions in the preamble herein recited, urgency is hereby declared to exist within the meaning of the city charter for the immediate preservation of the public peace, health and safety, wherefore this ordinance shall take effect and be in force from and after its passage.

"Passed by the council this 21st day of May, 1929.

"CHARLES A. PATTERSON, Mayor.

"Attest: MAUDE E. FONES, City Clerk.

"Form approved: R. A. PEARSON, City Attorney."

"Plaintiffs state that pursuant to said ordinance on the 11th day of June, 1929, an election was held in said city of Joplin for the purpose of voting on the extension of the said city limits of Joplin including the above described territory located in Newton county, Missouri, and at said election held on said date as aforesaid a majority of the votes cast were in favor of extending the city limits of said city of Joplin over and including the territory hereinbefore described, located in Newton county, Missouri, that on the 12th day of June, 1929, the council and mayor of the city of Joplin herein by resolution and ordinance declared that said ordinance carried and adopted by a majority of the votes cast and declared said ordinance in full force and effect extending the limits and jurisdiction of said city over said proposed additional territory located in Newton county, State of Missouri, and that said city is now undertaking to and is extending its jurisdiction and authority over the aforesaid territory located in Newton county, State of Missouri, and the inhabitants thereof, and that the defendants herein are enforcing the ordinances, laws and regulations of the city of Joplin and threaten-

ing to enforce the laws, ordinances and regulations over the aforesaid territory located in Newton county, Missouri, and the inhabitants thereof, that said city by ordinance has established wards over the aforesaid territory and the inhabitants thereof and designated voting places for said inhabitants thereof, that said city of Joplin is threatening to arrest the citizens and inhabitants of said territory for violating therein the ordinances of said city of Joplin and subjecting them to prosecution in the municipal court in the city of Joplin for offenses committed in said territory in the said Newton county, that said defendants are in every way attempting to enforce the laws, ordinances and regulations of Joplin over the territory located in Newton county and the inhabitants thereof and to enforce upon the inhabitants thereof the municipal government of the said city of Joplin and to force the inhabitants or citizens of said territory located in Newton county as aforesaid to be amenable and subject to the laws, ordinances and regulations of the city of Joplin, the defendants are doing these things as aforesaid and will continue to do so unless enjoined from so doing, that the said city of Joplin and its officers, agents and servants have no jurisdiction or authority in said territory located in Newton county as aforesaid and that their acts are void and without authority, and that they are trespassers when they attempt to subject the citizens of said territory located in Newton county as aforesaid to the municipal government of Joplin.

''Wherefore, plaintiffs pray that the defendants herein, their agents, servants and employees be permanently restrained and enjoined from the enforcement of that part of said ordinance extending the city limits of said city of Joplin, Jasper county, Missouri, into Newton county, Missouri, from enforcing or attempting to enforce the laws, ordinances and regulations of said city in that part of said territory heretofore described, located in Newton county, Missouri, from molesting or interfering or. attempting to exercise any rights, authority or jurisdiction over the inhabitants. of Newton county, Missouri or from directing the acts of said citizens of said territory while in said territory and from prosecuting them while in said territory on the charge of violating any of the laws, ordinances or regulations of said city, and for any other and further relief to which the plaintiffs may be entitled.''

The defendants filed their demurrer, which is as follows:

''Come now the defendants in the above cause and demur to plaintiff's petition filed herein for the following reasons:

'' (1) Because, on the face of plaintiffs' petition it appears that the complained of extension of the boundaries of the city of Joplin, a city of the second class, was effected under and in accordance with the provisions of a general statute of the State of Missouri authorizing the same, to-wit, under section 7973, Revised Statutes of Mis-

souri for 1919, the same being laws of Missouri for 1913, page 423, said statute not being restrained in nor prohibited by the Constitution of the State of Missouri, and being passed in accordance with and being in strict compliance with the provisions of section 7 of article IX, of the Constitution of the State of Missouri, relating to cities and towns, their organization and classification, and in compliance with the provisions of subdivision (II) of section 53, article IV, of the Constitution of the State of Missouri, relating to cities, towns and villages and the changing of their charters.

"(2) Because the granting of the relief prayed for in plaintiffs' petition by denying to the city of Joplin, a city of the second class, the right to extend its boundaries over adjacent territories under the provisions of section 7973, Revised Statutes of Missouri for 1919, above referred to, across and over a county line, would constitute a special classification of the city of Joplin, a city of the second class, by the action of the court, in violation of section 7 of article IX, and of subdivision (II) of section 53, article IV, of the Constitution of the State of Missouri above referred to in that it would create different rules of law for the extension of boundaries for different cities within the second class.

"3. Because, under the provisions of the Constitution of Missouri aforesaid, to-wit, section 7 of article IX, and subdivision (II) of section 53, article IV, and under the provisions of the statute aforesaid, to-wit, section 7973, Revised Statutes of Missouri for 1919, the extension of the boundaries of the city of Joplin, a city of the second class, is a purely legislative question, and the power of said extension is vested in said city by legislative enactment, general in its character, under the provisions of the State Constitution, and without restriction in the constitution, and is not a subject for judicial determination.

"(4) Because plaintiffs' petition does not state facts sufficient to constitute a cause of action or to entitle plaintiffs to the relief prayed for."

On the 19th day of March, 1930, the court sustained said demurrer, and upon the plaintiffs' election to stand upon said petition, the court rendered judgment in favor of the defendants, and the plaintiffs appealed.

The appeal was granted to the Supreme Court of this State, and that court in an opinion handed down December 31, 1930, reported in 35 S. W. (2d) 35, transferred the case to this court, holding that there was no constitutional question involved.

The case is before us under the following assignments of errors:

"1. The court erred in sustaining the defendants' demurrer to the petition and entering judgment for defendants.

"2. The court erred in holding that the city of Joplin has power under the law, section 7973, Revised Statutes 1919, to extend the

limits of the city over and so as to include therein territory in New-ton county, Missouri.''

The Supreme Court with these same assignments of error before it held that the question involved was only that of construing a statute. That court expressed itself in this language:

''But whatever the application and limitations of the rule as to inherent constitutional questions may be, it is certain no constitutional question was raised below by the appellants in this case. As stated, their petition does not show it; their brief does not claim it; they do not do it here. Their assignment of error on appeal is merely that 'the court erred in holding that the city of Joplin has power under the law, section 7973, Revised Statutes 1919, to extend the limits of the city over and so as to include therein territory in Newton county, Missouri.' The questions tendered by the appellants below were simply questions of statutory construction.''

The statute involved in this case in section 6483, Revised Statutes 1929, and that part of this section which we are called upon to construe is as follows:

''The council of such city, with the consent of the majority of the legal voters of such city voting at an election therefor, shall have power to extend the limits of the city over territory adjacent thereto, and to diminish the limits of the city by excluding territory therefrom, and shall, in every case, have power with the consent of the legal voters as aforesaid, to extend or diminish the city limits in such manner as in their judgment and discretion may redound to the benefit of the city.''

Our courts have given us some very clear and instructive rules to follow in the construction of statutes. Our Supreme Court in State ex rel. Cobb v. Thompson, 5 S. W. (2d) at page 59, uses this language:

''A statute is not to be read as if open to construction as a matter of course. It is only in the case of ambiguous statutes of uncertain meaning that the rules of construction can have any application. Where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction, and the courts are not permitted to search for its meaning beyond the statute itself. [25 R. C. L. 957; Trefny v. Eichenseer et al., 262 Mo. 436, 171 S. W. l. c. 932; Grier v. Ry., 286 Mo. 523, l. c. 534, 228 S. W. 454; State ex rel. Brown v. Board of Education, 294 Mo. 106, l. c. 115, 242 S. W. 85; R. S. 1919, article 7058.]

''A standard text states the rule as follows:

''If the words (of the statute) are free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation. It is not allowable to interpret what has no need of

interpretation. The statute itself furnishes the best means of its own exposition; and if the sense in which words were intended to be used can be clearly ascertained from its parts and provisions, the intention thus indicated will prevail without resorting to other means of aiding in the construction. [2 Lewis-Sutherland Stat. Const. (2 Ed.), p. 698.]''

The Supreme Court, en banc, in holding that a change in a statute must come through the Legislature and not by judicial construction, in State ex rel. Tobacco Co. v. Gehner, 316 Mo. 1075, 1082, 292 S. W. 1028, uses this language:

''Section 13114 is plain and unambiguous and requires no construction to ascertain the intent and meaning of the Legislature. If the policy thus plainly expressed is unwise or out of harmony with the general scheme of taxation of the State, the change to a wiser and more harmonious rule must come from the Legislature. Such change cannot be accomplished by judicial construction.''

MR. JUSTICE BREWER, in the case of United States v. Boldenberg, 168 U. S. at page 103, uses this language which is very much in point here:

''The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used. He is presumed to know the meaning of words and the rules of grammar. The courts have no function of legislation, and simply seek to ascertain the will of the Legislator. It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission nor mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute.''

Learned counsel for appellants express some of their objections to so extending the city limits in the following language, which we have quoted from their supplemental brief and argument:

''Section 7615, Revised Statutes 1919, mentioned in respondents' brief provides that a city may be incorporated partly in one county and partly in another. This section requires that a petition be signed by a majority of the taxable inhabitants of such city or town in each county. It is not a proceeding *in invitum* as attempted here. It recognizes county lines. Now if Joplin were seeking to be incorporated for the first time, and its people contemplated including a part of Newton county now under consideration, that part could not be included without the consent of a majority of the taxable inhabitants of Newton county to be taken in. Yet under the ordinance in question Joplin, happening to be already incorporated,

may take this territory in without the consent of its inhabitants.

"That section has another peculiar feature relating to a city thus incorporated in two counties. When the mayor or judge of a municipal court there renders a judgment from which an appeal is taken the mayor or municipal judge can determine the circuit court and the county which may entertain jurisdiction of the appeal: Thus constitutional and statutory jurisdiction of courts of record are at the whim of a municipal official. He could send the appeal from a judgment for an offense committed in Newton county to the circuit court of Jasper county, and *vice versa,* if such a law is constitutional. Section 8163 provides that the mayor of a city of the second class shall be *ex-officio* justice of the peace 'within the limits of the city.' The jurisdiction of a justice of the peace is limited to one county but the mayor as such justice would have jurisdiction in the city of Joplin its entire extent in two counties. A justice of the peace is a constitutional officer. [Const., sec. 37, art. VI.] His jurisdiction is limited to his county. Thus the General Assembly repeals or modifies the Constitution.

"The section provides further that if it appears that one charged with violation of one ordinance ought to be put on trial for an offense against a criminal law of the State and not cognizable before the mayor as municipal judge he should stop the proceeding as a municipal judge and proceed as a justice of the peace. As a justice of the peace in what county? If the offense were committed on the Newton county side and the accused appeared before the mayor of the Jasper county side how could he continue as justice of the peace to try the case in Jasper county? Again, an appeal may be taken from a judgment in such case, 'to the court having criminal jurisdiction.' Where is the court having criminal jurisdiction of a case where the offense is committed in Newton county and the case tried in Jasper county? Further, in all cities jury trials are permitted on charges for violation of city ordinances and appeals are allowed to courts having criminal jurisdiction. If one were accused of an offense committed on the Newton county side of the city and brought to trial on the Jasper county side and convicted, would appeal be to the court having criminal jurisdiction in Newton or in Jasper county?

"Under section 7767, when a city of the second class desires to establish, open, widen or alter streets, sidewalks, etc., it shall apply to the circuit court of the judicial circuit where such city is located. Now Jasper county is in one judicial circuit and Newton county is in another. Then to which judicial circuit should this application be made?

"Under section 7769, in such case the circuit court shall appoint a commission of 'freeholders of the city' to assess damages. Shall

they be of that part of the city in Newton county or in Jasper county?

"Suppose a citizen of Newton county is injured by reason of defective sidewalk located on the Newton county side. Joplin is a resident of Newton county yet the injured party, a resident of Newton county, cannot institute his suit in his own county against a resident of his own county because proper service cannot be had upon the city of Joplin in Newton county.

"These and other instances show that extending the limits of an incorporated city across the line of another county would create such inharmonies, incongruities, conflicts of jurisdiction and confusion that we cannot infer from the general language used in relation to the extension over 'adjacent territory' that it may be done, at least without the consent of the parties affected by it. It should not be done at all in the absence of an express authorization to that effect and provision for reconciling the contradictions and inharmonies which would ensue."

It is insisted by appellants as shown from the above quotation and other parts of their brief, that some of the difficulties to be encountered, are: the condemnation of property for public use; jury trials for violations of city ordinances; appeals in such cases; justices of the peace; assessment of property for taxation; the forum of a trial for personal injuries against the city; and the effect on school districts. These might be difficulties growing out of such a condition as presented here by extending the limits of the city of Joplin into Newton county, but are they such difficulties that should be remedied by judicial construction of a statute. We think not.

We have provisions in our statutes providing for incorporating cities and towns situated on the county line, and in two counties, section 6095, Revised Statutes 1929. Appellants contend that this section should not be considered in construing the statute under consideration in the instant case, because section 6095, applies to newly incorporated cities, and is not an extension of limits to take in adjacent territory as in this case.

In 1929 the Legislature of this State, Laws 1929 at page 293, provided especially for the procedure in consolidating certain cities in adjoining counties. It is true that the cities referred to in this section may be of a different class to that of the city of Joplin, but in each of the two sections of the statutes last above mentioned the Legislature provided for incorporation or consolidation of cities in adjoining counties, and we can conceive of no reason why the same difficulties urged by appellants here could not be as well urged against the incorporation or consolidation of cities in different counties, and since these very same difficulties would not prevent the incorporation of cities in adjoining counties under the provisions of

section 6095, supra, nor prevent the consolidation of two cities in adjoining counties under the laws of 1929, supra, section 7690, Revised Statutes 1929, we can think of no reason why this court should read into section 6483, Revised Statutes 1929, a proviso such as contended for by the plaintiffs. The language of section 6483 is very plain and unambiguous, and we feel that if any restrictions are to be placed therein it is a matter for the Legislature and not for the courts.

It follows that the judgment should be affirmed. It is so ordered.

*Cox, P. J.,* and *Bailey, J.,* concur.