REED H. HIXSON, GEORGE W. MOFFETT, ADOLPH C. WOODBURY, ARTHUR C. SCHROEDER, and CHARLES L. HOWARD, Respondents, v. KANSAS CITY, MISSOURI, a Municipal Corporation, WILLIAM E. KEMP, FRANK H. BACKSTROM, REED O. GENTRY, ILUS W. DAVIS, THOMAS J. GAVIN, JOSEPH M. NOLAN, HARRY S. DAVIS, ROBERT J. BENSON, WALTER R. SCOTT, L. P. COOKINGHAM, and MARGARET STRAHM, Appellants, No. 42406—239 S. W. (2d) 341.

Court en Banc, April 9, 1951.

Rehearing Denied, May 14, 1951.

1212

David M. Proctor, City Counselor, and John J. Cosgrove, Assistant City Counselor, for appellants.

*James P. Aylward, George V. Aylward* and *Terence M. O'Brien* for respondents.

[342] TIPTON, J.—This is a declaratory judgment action brought in the circuit court of Jackson County by respondents, residents of Kansas City, Missouri, in behalf of themselves and all others similarly situated, to determine the legality of the refusal of appellants to submit a proposed amendment to the charter of Kansas City providing for a reduction of its territorial boundaries so as to exclude that part of Kansas City now lying in Clay County. This is the same territory that was annexed to Kansas City on January 1, 1950. The legality of this annexation was approved by this court in the case of State ex inf. Taylor, Attorney General, ex rel. Kansas City, v. North Kansas City, 360 Mo. 374, 228 S. W. 2d 762, which judgment of this court became final on April 10, 1950. The trial court held that

respondents were entitled to have the proposed amendment voted on by the electorate of Kansas City.

By stipulation it was admitted that on June 21, 1950, the respondents presented a petition signed by over 32,000 qualified voters of Kansas City to the Election Board of Kansas City to reduce the corporate limits of that city by excluding the area in Clay County. It is admitted that that board certified that a sufficient number of qualified voters had signed the petition for the proposed amendment under Section 20 of Article VI of the 1945 state constitution to have an election so the voters of that city may determine if its charter should be amended as proposed by the petition; that this petition was then submitted to the city clerk of Kansas City but the clerk refused to accept the petition; and that the transcript of the evidence and exhibits in the Taylor case, supra, shall be considered as evidence in this case.

The stipulation further stated that since the summer of 1947 to January 1, 1950, the population of the Clay County area has increased about 4,000; that during that time approximately 1,000 new homes have been built; that between January 1 and October 1, 1950, Kansas City issued 241 building permits for dwelling units and 2 permits for business buildings; that Kansas City has contracted to purchase the Milwaukee bridge which will benefit this area; and that Kansas City has given this area garbage collection, fire and police protection, street repairs, and has reduced the rates on utility service rendered.

The contentions of appellants are that they are without power to pass an ordinance submitting the proposed amendment to the charter of Kansas City; that the proposed amendment is unreasonable, in fact, the question of unreasonableness is res adjudicata, having been adjudicated in the [343] Taylor case; and that the proposed amendment is unconstitutional because it impairs the obligation of contract in regard to the bonds sold by Kansas City after this area was annexed.

On the other hand, respondents contend that Section 20 of Article VI imposes upon appellants the duty of submitting the proposed amendment to the charter; that the proposed amendment is reasonable; and that it involves no impairment of contract obligations.

Section 20 of Article VI of our 1945 constitution reads: "Amendments of any city charter adopted under the foregoing provisions may be submitted to the electors by a commission as provided for a complete charter. Amendments may also be proposed by the legislative body of the city or by petition of not less than ten per cent of the registered qualified electors of the city, filed with the body or official having charge of the city elections setting forth the proposed amendment. The legislative body shall at once provide, by ordinance, that any amendment so proposed shall be submitted to

the electors at the next election held in the city not less than sixty days after its passage, or at a special election held as provided for a charter. Any amendment approved by a majority of the qualified electors voting thereon, shall become a part of the charter at the time and under the conditions fixed in the amendment; and sections or articles may be submitted separately or in the alternative and determined as provided for a complete charter.''

If we were to concede that respondents are otherwise entitled to have the proposed charter amendment submitted to a vote of the people, and if we further concede that at such an election the charter amendment would receive a carrying vote, we would nevertheless be compelled to rule under this record that such action purporting to de-annex the Clay County area would be unreasonable.

In the first place, that question was adjudicated in the Taylor case, supra. In the second place, the testimony and exhibits that were in the Taylor case are before us by stipulation of parties. And in the third place, the prayer of respondents' petition in this declaratory action, among other things, asks ''that this court determine all questions of validity in the premises.'' Therefore, the question of reasonableness is directly before us.

Respondents contend that the Taylor case is not res adjudicata in this case because different parties are involved. They make this contention for the reason that the class represented by the intervenors in that case was limited to residents of the Clay County area while the class represented in this case resides both in Clay and Jackson Counties.

In the Taylor case the intervenors were opposed to the annexation of the Clay County area to Kansas City. In the case at bar, respondents are opposed to this territory's being a part of Kansas City and are trying to de-annex it. So, the interest of the intervenors in the Taylor case and the interest of respondents are the same. Under similar circumstances we held that the rule of ''privies'' of parties applied and that the parties in the second suit whose interests were the same as the parties to the first suit were bound by the judgment of the first suit in the case of Drainage District No. 1 Reformed v. Matthews, 361 Mo. 286, 234 S. W. 2d 567, l. c. 574. In ruling that case, we said:

''*The doctrine [res adjudicata] is applicable if (as here) the interest of the represented and the representative are so identical that the inducement and desire to protect the common-interest may be assumed to be the same in each and if there can be no adversity of interest between them.* The rule of Powell v. City of Joplin, supra, is not opposed to the fundamental principle that a stranger to a cause and to its subject matter is not bound by a judgment as to which he had no opportunity to be heard. But in the instant circumstances under the applicable principles and the broad policy of the law to bring litigation

to an end the res judicata rule must be applied. And under the principles of that rule 'privity' depends more upon the relation of the parties to the subject matter than upon their connection as parties [344] with or any activity in the former litigation. Generally speaking, privies are those legally represented at the trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment. Cases cited in preceding paragraph, and 30 Am. Jur. Judgments, § 225; Taylor v. Sartorius, 130 Mo. App. 23, 108 S. W. 1089, 1094; Perkins v. Goddin, 111 Mo. App. 429, 85 S. W. 936; Wors v. Tarlton, 234 Mo. App. 1173, 95 S. W. 2d 1199, 1207. Plaintiffs' final contention must be denied.'' (Italics ours.)

The case of Powell v. City of Joplin, 335 Mo. 562, 73 S. W. 2d 408, 1. c. 410-411, involved the validity of the annexation to the city of Joplin of certain lands in Newton County. We held that the issues in the Powell case were res adjudicata because the validity of the annexation had been decided in the case of Schildnecht v. City of Joplin, 327 Mo. 126, 35 S. W. 2d 35 and id., 226 Mo. App. 47, 41 S. W. 2d 590. In ruling the Powell case, we said

'' 'In the case of Clark v. Wolf, 29 Iowa, 197, the precise question was considered at length, and it was there held that a judgment against a county or its legal representatives, in a matter of general interest to all the people thereof, as one respecting the levy and collection of a tax, is binding not only on the official representatives of the county named in the proceeding as defendants, but upon all the citizens thereof though not made parties defendant by name. This we think is so both on principle and authority, for in suits of the character mentioned the legally constituted representatives of the county stand in the place of each citizen of the county who is liable to be called on as a tax-payer to contribute his proper proportion to liquidate the demand which a judgment may establish.' These principles should apply with equal force to a judgment in favor of a municipal corporation involving its jurisdiction over annexed land. There was not in this case any suggestion of fraud or collusion in the procurement of the judgment in the Schildnecht Case. And the record of that case would not sustain such a suggestion if made.''

There is not the slightest suggestion that there was any fraud or collusion by the intervenors in the Taylor case. In the Taylor case (1. c. 778) we found as a fact that the annexation of this area was reasonable, and did not decide that question on the presumption that it is prima facie reasonable if that question is fairly debatable. In ruling this issue, we said:

''From that testimony we cannot say that the question of reasonableness is not a 'fairly debatable' one. But notwithstanding the

rule of the last above named cases, we have independently examined and carefully considered the question of reasonableness. This case has received the attention which its importance demands, and our conclusion, after a thoughtful consideration of the record, exhibits, contentions briefed and authorities cited, is, and we hold, that relator's instant charter amendment providing for the extension of its city limits, is reasonable.''

There has been no substantial or material change in conditions that would bear on the question of reasonableness since our decision in the Taylor case. It is stipulated that at this time there is no need to build a new airport in Clay County, and Kansas City has no plans for building such airport but, as before stated, that between January 1 and October 1, 1950, Kansas City issued 241 building permits for dwelling units and 2 permits for business buildings.

The respondents have produced no material evidence bearing upon the question of reasonableness of the proposed charter amendment to de-annex the Clay County area since our decision in the Taylor case which was decided less than a year ago. That case went to the merits of the question of reasonableness. Under these circumstances, the plea of res adjudicata must be sustained.

The judgment is reversed and the cause remanded, and the trial court is directed to enter a new judgment declaring that [345] the appellants are not required to submit the proposed charter amendment for de-annexation.

*Hollingsworth, J.*, concurs in separate opinion; *Dalton* and *Ellison, JJ.*, concur in result and in separate concurring opinion of *Hyde, C. J.; Leedy, J.*, concurs and concurs in separate opinion of *Hollingsworth, J.; Conkling, J.*, concurs and concurs in separate opinion of *Hollingsworth, J.*, and also in second and third paragraphs of separate opinion of *Hyde, C. J.; Hyde, C. J.*, concurs in result in separate opinion filed.

HOLLINGSWORTH, J.— I concur in the opinion of Tipton, J.

In the Taylor case, one of the issues presented by the intervenors (whose rights are identical in origin and substance with those of these respondents) was that ''relators proposed annexation is *factually* unreasonable and for that reason is void.'' We decided that issue unequivocally and adversely to those intervenors. We found that annexation was factually reasonable and valid.

It is inaccurate, I think, to now say we were merely deciding that annexation was not conclusively shown to be unreasonable and, therefore, we may not or should not decide whether our decision in the Taylor case is res adjudicata of the identical issue here presented. If, by the Taylor case, we rightfully decided (as I think we did) the issue

here presented, then we should say so. Otherwise, the issue may be presented again and again.

Let us suppose that a newly elected city council, acting on its own initiative or under the impetus of lawfully filed petitions, decides to submit the issue of de-annexation, *even though there is no showing of changed conditions,* may we not be again called upon to decide whether the matter is "fairly debatable"? In such an event, under the rule that the action of the council in submitting the issue of de-annexation constitutes prima facie evidence of its reasonableness, the burden of proof would shift; a burden the successful "annexers" in the Taylor case should not be required to bear. If, however, res adjudicata applies, the burden of proof would remain where we placed it in the first instance.

Our opinion in the Taylor case held that as of the date of adjudication annexation was reasonable. That decision should stand until a change of conditions is shown, and the burden of proving such a change should remain upon the "de-annexers". The taxpayers, home owners and business interests of Kansas City should not be subjected to the possibility of recurring litigation of an issue once judicially determined. Yet, unless we apply the rule of res adjudicata, it can happen whenever the "Outs" become the "Ins".

HYDE, C. J. (concurring)—██ I doubt that res judicata can be applied to the situation in this case. In State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S. W. (2d) 762, we could not hold the annexation invalid unless we found it clearly unreasonable, which means unreasonable as a matter of law. If it was reasonable either way (fairly debatable) that was enough to uphold it after the voters had decided in favor of it. (State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S. W. (2d) 393.) It is true that we said (in State ex inf. Taylor v. North Kansas City) the annexation was reasonable, but, in my opinion, this did not mean we were ruling that only annexation would be reasonable. I think it meant that either annexation or refusal to annex would have been reasonable, because that was the real question before us in that case. In other words, to decide that case, we were not required to hold that the annexation was conclusively reasonable (reasonable as a matter of law) but only that it was not conclusively unreasonable. Therefore, I think we should determine the question of the reasonableness of the present [346] de-annexation proposal upon the facts that now exist with reference to it.

██ The question of the reasonableness of a proposed annexation or detachment of territory is always one for the Court upon all the facts of the case. (State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S. W. 1007 and cases cited.) Certainly detachment of territory requires different circumstances from annexation. The essential facts

to justify annexation are expansion and growth of the area, due to the influence of the city, and the necessity to provide room for future growth. Thus it would seem that detachment would usually require a showing of just the opposite conditions, namely: failure to grow and decrease in population, business and industry, leaving an area of no immediate or prospective use for the purposes of the city and its people. Cases, which have approved detachment of territory, usually are based on such a showing or other special conditions making the land of no real use to the city. (See Annotation 62 A. L. R. 1029-1043; see also 2 McQuillin, Municipal Corporations 333, Sec. 7.27.) No such showing is or could be made in this case. Therefore, I concur in the result reached herein on the ground that it would now be unreasonable to detach this area from Kansas City when it showed an increase of 4000 population and 1000 homes during the period (of about 2-1/2 years) while the validity of the annexation was under consideration, in State ex inf. Taylor v. North Kansas City, supra, prior to its final submission in this Court, and when this growth has continued by 241 building permits for dwelling units being issued during the first 10 months of 1950; and because this development, which obviously appears from the record to be due to Kansas City, and the improvements which Kansas City has made and has contracted to make in the area (which includes its airport and waterworks) demonstrate that it is now becoming, or in the near future will become, an essential part of Kansas City; that is essential to its future growth and welfare.

In case of a proposed annexation that is clearly shown to be unreasonable, I believe it might even be proper to enjoin the election. (For a case holding an annexation unreasonable see Stoltman v. City of Clayton, 205 Mo. App. 568, 226 S. W. 315.) Likewise, I think it would be proper in a declaratory judgment action in a case of de-annexation, when we find such action unreasonable, to order a declaration that such a proposition should not be submitted.

Therefore, I concur in reversing the judgment and remanding the cause with directions to enter a judgment declaring that the City is not required to submit the proposed charter amendment for de-annexation. *Ellison* and *Dalton, JJ.,* concur; *Conkling, J.,* concurs in paragraphs 2 and 3.