Donald R. YOUNG et al., Appellants,

v.

MAYOR, COUNCIL AND CITIZENS OF the CITY OF LIBERTY, Missouri, a Municipal Corporation, Respondents.

No. 59110.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1976.

Rehearing Denied Feb. 9, 1976.

John C. Dods Shook, Hardy & Bacon, and Richard E. Duggan, Kansas City, for appellants.

Don M. Jackson, Kansas City, for respondents.

PER CURIAM:

This case, involving an attack upon the validity of an annexation by the city of Liberty, resulted in a judgment for the city, et al. (defendants) and an appeal to the court of appeals, Kansas City district. That court reversed and remanded in an opinion by Welborn, sitting as a special judge, after which we ordered the case transferred to this court. We determine after review that the opinion of Welborn, S. J., should be, and it is, adopted with minor additions as the decision of this court.

The city of Liberty is a Special Charter city, having a population by the 1970 census of less than 20,000 inhabitants. Its power of annexation is fixed by § 81.080, RSMo 1969, which provides, in part:

"Any city or town of less than twenty thousand inhabitants and having a special charter, after the taking effect of such charter, may at any time extend its limits by ordinance, specifying with accuracy the new lines to which it is proposed to extend such limits. All courts of this state shall take judicial notice of the limits of such city when thus extended."

On April 6, 1962, the Liberty City Council passed a resolution by which it declared its intention to annex approximately 25 square miles of unincorporated territory, described in the resolution. The date of the proposed annexation was set as January 1, 1967.

In compliance with the "Sawyers Act" (§ 71.015, RSMo 1969), approximately one year later, on May 31, 1963, the city filed an action (case No. 29890) for a declaratory judgment. The petition described the area to be annexed as that covered by the resolution and stated that the city "proposes that such annexation would become effective on January 1, 1967." Six landowners in the area proposed to be annexed were named defendants and class representatives. No response to the city's petition was filed.

On September 9, 1963, the matter was heard in the Clay County Circuit Court, Division No. 2. On that date, the circuit court entered judgment, by which it found that the defendants were fairly chosen; that they adequately and fairly represented the whole class of landowners in the area to be annexed; and, that all of the landowners in the area described will be bound by the judgment. The judgment further recited:

"The Court further finds that the annexation prayed in the plaintiff's petition is reasonable and necessary to the proper development of the plaintiff's city and further finds that the plaintiff will have the ability to furnish the normal municipal services to the area herein sought to be annexed within a reasonable time after said annexation has become effective on January 1, 1967."

The court adjudged "that the plaintiff be and is hereby authorized to annex to the City of Liberty the * * * property [described in the petition]."

Having obtained the above judgment as required by the Sawyers Act, the Liberty City Council enacted on the same day (September 9, 1963) Ordinance No. 2278, extending the city limits to include the area set out in the judgment, and prescribing an effective date for the annexation of January 1, 1967.

On December 22, 1965, the city council amended Ordinance No. 2278 by removing a part of the area described in Ordinance No. 2278. The ordinance recited no reason for the change. The size of the deleted area

does not appear other than as property lying in two survey sections.

On December 22, 1966, the council again amended Ordinance No. 2278, this time to postpone the effective date of the annexation to January 1, 1968. The ordinance, as thus amended, recited that there was a pending lawsuit challenging another annexation and that if that annexation were held invalid, the territory covered by Ordinance No. 2278 would not be contiguous to the city limits.

Five subsequent amendatory ordinances, enacted from December 18, 1967, to December 13, 1971, each postponed the effective date of the annexation by one year, until January 1, 1973, became the effective date. No reason for the amendments appears in any of these ordinances.

On October 30, 1972, Ordinance No. 2278, as amended, was again amended. By this amendment, the last, the limits of the area to be annexed were changed so that the size of the area to be annexed in fact on the effective date was reduced to less than one-half of that originally proposed. The area described in this amendatory ordinance was all within the area originally proposed to be annexed. The ordinance called for the extension of the city limits to become effective January 1, 1973.

On December 21, 1972, Donald R. Young, et al. (plaintiffs), three residents of the area described in the last ordinance, brought the instant suit in three counts: (1) to enjoin enforcement of Ordinance No. 2278, as amended; (2) for a declaratory judgment to the effect that the ordinances purporting to annex the area to the city of Liberty are void; and (3) in quo warranto on the information of the Clay County Prosecuting Attorney at the relation of a resident of the area sought to be annexed, praying for a judgment that the ordinances purporting to annex the tract in question were void.

The grounds for relief were the same in all three counts. Several of the grounds have been abandoned and basically the sole ground now relied upon is paragraph 11(e) of Count I of the petition:

"The defendant has failed and refused to comply with the intent and purpose of Section 71.015, et seq., RSMo., 1969, as amended, by attempting to delay the effective date of said annexation beyond the time set forth in the original Ordinance No. 2278 and as declared by this Court in cause No. 29890, in that the defendant has illegally attempted to circumvent the requirement of law that a court of general jurisdiction declare the reasonableness and necessity of the proposed annexation of the specific area sought to be annexed at a time contemporaneous with the date thereof; * * *."

The defendants' answer in general alleged that the city had complied with the Sawyers Act in the 1963 action and that subsequent postponement of the effective date of annexation and reductions in the area to be annexed were matters for determination by the city council in the exercise of legislative right and prerogative. The defendants also asserted that the 1963 declaratory judgment was res judicata, giving the city a continuing authority to proceed with the annexation at such times and in such manner as might be determined solely by it.

No temporary injunctive relief was granted and the annexation became effective January 1, 1973.

The cause was heard in circuit court on July 5, 1973. The plaintiffs presented documentary evidence consisting of the ordinances involved, the petition and judgment in the 1963 action and a land use sketch plan, dated October, 1970, prepared by the Metropolitan Planning Commission, Kansas City Region, which described the boundary of the area authorized to be annexed as a "holding order" boundary. Plaintiffs also offered oral testimony of one of the plaintiffs and what they claimed were admissions from depositions of the Mayor and City Administrator of Liberty.

The trial court found for defendants. Its conclusions of law are as follows:

"1. The declaratory judgment entered on September 6, 1963, by the Circuit Court of Clay County, in Case No. 29890 authorized the City to proceed with the annexation of the area of land described therein as otherwise authorized by its charter and became a final, binding and conclusive judgment, no appeal being taken therefrom.

"2. The date of January 1, 1967, in the declaratory judgment entered on September 6, 1963, in Case No. 29000 was the earliest date on which said annexation could become effective. It did not prevent the City from postponing the date.

"3. After the declaratory judgment was entered in Case No. 29890, the time when the limits of the annexation to be made by the City, so long as the land annexed lay within the boundary of the tract set out in the judgment, was solely and exclusively a discretionary legislative prerogative for the determination by the City Council of the City of Liberty. This judgment merely established that the annexing of the described tract was reasonable and necessary to the proper development of the City, and that the City could provide municipal services; its effect was merely to authorize the City to proceed. The City was not bound or required to proceed to annex all of the described tract and could postpone action to such later date as it might see fit, or annex only a portion of the tract, in its sole discretion, subject only to a change of conditions and circumstances.

"4. All actions taken by the City Council subsequent to September 6, 1963, in amending the original ordinance of that date, No. 2278, either with respect to reducing the territory to be included or extending the effective date, were legal and valid ordinances enacted pursuant to the power vested in the City Council of the City of Liberty.

"5. The judgment in Case No. 29890 finding that annexation of the area described therein by the City of Liberty was reasonable and necessary is res adjudicata, binding and conclusive unless and until such a substantial change of conditions and circumstances is shown as to make the annexation unreasonable and unnecessary, rather than reasonable and necessary as found.

"6. That the burden of proving such a substantial change of conditions and circumstances was upon the plaintiffs in this case. The plaintiffs have failed to establish that there was such a substantial change of conditions and circumstances as to make the annexation under the authority of the judgment in Case No. 29890 unreasonable and unnecessary so that such judgment remains binding and conclusive and is res adjudicata of this action.

"7. A valid annexation of the area in question was accomplished by the City on January 1, 1973, pursuant to the provisions of Ordinance No. 3229, so that this area is, and continuously has been since that date, a part of the City of Liberty."

After their post-judgment motion had been overruled, plaintiffs appealed.

On this appeal, the basic position of plaintiffs is that once a judgment has been rendered under the Sawyers Act, giving judicial authorization of a proposed annexation, a substantial change in the annexation proposal requires the city to obtain a further adjudication under the Sawyers Act with respect to the altered proposal.

Section 71.015, the Sawyers Act, provides:

"Whenever the governing body of any city has adopted a resolution to annex any unincorporated area of land, such city shall, before proceeding as otherwise authorized by law or charter for annexation of unincorporated areas, file an action in the circuit court of the county in which such unincorporated area is situated, under the provisions of chapter 527 RSMo, praying for a declaratory judgment authorizing such annexation. The petition in such action shall state facts showing:

"1. The area to be annexed;

"2. That such annexation is reasonable and necessary to the proper development of said city; and

"3. The ability of said city to furnish normal municipal services of said city to said unincorporated area within a reasonable time after said annexation is to become effective. Such action shall be a class action against the inhabitants of such unincorporated area under the provisions of section 507.070, RSMo."

■ The purpose and effect of this statute has been stated in the numerous cases which have arisen since its passage. It does require a favorable judgment as a condition precedent to a municipal annexation. The essential consideration for the court is the reasonableness of the proposed action, the same judicial question which was involved in annexation cases prior to the Sawyers Act, except that in those cases, the question arose subsequent to the annexation, not before. In such prior cases, the proponents of "unreasonableness" had the burden of proof on that issue. See *Seifert v. City of Poplar Bluff,* 112 S.W.2d 93, 96[2] (Mo.App.1938). The Sawyers Act changed that burden by requiring the municipality to bring an action before annexation and demonstrate the "reasonableness" of its proposed action. *City of St. Joseph v. Hankinson,* 312 S.W.2d 4 (Mo.1958); *City of Olivette v. Graeler,* 338 S.W.2d 827, 833[2, 3] (Mo.1960); *City of Bourbon v. Miller,* 420 S.W.2d 296, 300[1–4] (Mo. banc 1967); *City of Odessa v. Carroll,* 512 S.W.2d 862, 866[1, 2] (Mo.App.1974). Annexation by a municipality remains a legislative prerogative. The Sawyers Act affects merely the procedure by which the limited authority of the judiciary in the process is invoked. *City of St. Joseph v. Hankinson, supra.*

"A municipal corporation or its corporate authorities have no power to extend its boundaries otherwise than as provided for by legislative enactment or constitutional provision. Such power may be validly delegated to municipal corporations by the legislature, and when so conferred must be exercised in strict accord with the statute conferring it." 56 Am.Jur.2d, Municipal Corporations, § 63, p. 117 (1971). As stated, the Sawyers Act imposes upon cities the obligation to procure, before completion of the annexation process, a declaratory judgment authorizing the annexation of the area the city intends to annex. *Julian v. Mayor, Councilmen and Citizens of the City of Liberty,* 391 S.W.2d 864 (Mo.1965). No valid annexation may be accomplished by a city such as Liberty without compliance with the Act. *Anderson v. Moline Acres,* 386 S.W.2d 38 (Mo.1964).

The issue here is what is the effect of the Sawyers Act when a city obtains judicial authorization for the annexation of certain territory and thereafter proceeds to annex in fact another tract which is less than half the size, but is a part of the original territory. Plaintiffs assert that such a change without again proceeding under § 71.015 results in the annexation of territory without that judicial scrutiny required by the Sawyers Act and, if permitted to stand, nullifies the protection the Act was designed to extend against arbitrary municipal extension of boundaries.

■ One of the matters required by the Sawyers Act to be stated in the city's petition is "The area to be annexed." This requirement is designed to permit citizens to identify the area proposed to be annexed. See *City of Cape Girardeau v. Armstrong,* 417 S.W.2d 661, 674[2] (Mo.App.1967). Compliance with this requirement delineates the area on which is based the court's inquiry and determination as to whether the requirements of reasonableness and ability to provide municipal services are demonstrated. The court cannot decide "reasonableness" and the city's "ability" except with reference to the territory submitted to it in the city's petition. *City of Bourbon v. Miller, supra* (420 S.W.2d at 301[5, 6]); *City of Aurora v. Empire District Electric Company,* 354 S.W.2d 45, 55–56[7, 8] (Mo.App.1962). Thus, in this case the circuit court, on the petition before it, could not have entered a judgment requiring or authorizing the city to annex only

the tract which it ultimately selected. *City of Bourbon,* supra. In the 1963 proceedings the actual judgment of the court was that " * * * the plaintiff be and is hereby authorized to annex to the City of Liberty the * * * property [described in the petition]."

Respondents contend and the trial court agreed that such a judgment did not restrict the legislative right of the city to determine the scope of its annexation plan so long as the area fell within the described area. However, the Sawyers Act itself is a limitation upon the municipal legislative prerogative. To hold that once a judgment approving an annexation has been obtained the plan is not subject to municipal legislative alteration without further judicial authorization does not amount to conferring legislative power on the court. The action of the court in approving or disapproving an altered proposal would be no less judicial than its approval of the original proposal. There is nothing which prevents the general assembly in conferring power of annexation to require that the municipality proceed with the plan as judicially authorized or obtain further judicial authorization if a different plan is thereafter proposed for ultimate adoption. *State ex rel. and to Use of Behrens v. Crismon, et al.,* 354 Mo. 174, 188 S.W.2d 937, 939[2, 3] (banc 1945).

The question presented by this case is essentially one of construction of the Sawyers Act. In view of the effect of the burden which that legislation shifted to the city of establishing in advance the reasonableness of its annexation proposal and in view of the requirement that the petition for approval describe the area proposed to be annexed, it is reasonable to conclude that the legislature intended to require the city to comply with the Act with respect to the area ultimately annexed and to require judicial authorization for that particular action. See *Anderson v. Moline Acres,* supra.

The defendants' argument, based primarily on the doctrine of res judicata, is not persuasive because there is no judgment authorizing the action which the city actually took.

Defendants rely heavily upon the case of *Hixson v. Kansas City,* 361 Mo. 1211, 239 S.W.2d 341 (banc 1951), a decision antedating the Sawyers Act, in support of their res judicata argument. That case involved an attempt by residents of Clay County to compel an election on their petition to amend the Kansas City Charter so as to change the boundaries by excluding that part of the city located in Clay County. The annexation which had added that territory to Kansas City had then only recently received approval of the Supreme Court in *State ex inf. Taylor ex rel. Kansas City v. North Kansas City,* 360 Mo. 374, 228 S.W.2d 762 (banc 1950), a decision which also antedated and did not involve the Sawyers Act. The annexation had become effective January 1, 1950, the decision in *Taylor* approving it had become final on April 10, 1950, and the *Hixson* petition for de-annexation was filed June 21, 1950. In declining to order the de-annexation election, the court stated that "action purporting to de-annex the Clay County area would be unreasonable"; that the "reasonableness" of the annexation had just been decided in *Taylor,* and that decision was res judicata of the issue. The requirement which *Hixson* imposed upon those persons seeking de-annexation is not applicable to this case.

In *Hixson,* supra, the city could point to a recent judgment which encompassed the precise area involved in both cases (*Hixson* and *Taylor*), and the principles of res judicata were applicable. Not so here, there is no judgment to which the city can point authorizing the particular annexation which the city purported to accomplish. Here, the action taken by the city was to annex in fact, not the land area it had, in its Sawyers Act suit, represented to the court to be reasonable and necessary to the proper development of the city, not the land area the court by its declaratory judgment authorized the city to annex, but, rather, a different tract of land. True, the area in fact annexed was a part, a small part, of the land

area authorized nine years earlier to be annexed, but it was not in fact the tract of land the Sawyers Act judgment had approved as reasonable and necessary to the proper development of the city. On the contrary, it was what was left after the city had determined, for some reason, that more than half of what it had sought originally was not, as it previously had represented to the court, reasonable and necessary to its development. We consider that the city's reason for this determination was that in the nine-year interim there were substantial changes in the circumstances and conditions of either the city or the area it had authority to annex, or such changes in both. To conclude otherwise would be to assume that the entire area originally proposed was not reasonably necessary to the city's development at the time of the Sawyers Act judgment, an assumption which would be contrary to the city's representations and the judgment. That, we are not prepared to assume.

The plaintiffs are not here asserting the unreasonableness of the annexation, but are attacking it on the sole ground that the city has not procured that judicial authorization required by the Sawyers Act.

We conclude that the annexation attempted to be effected January 1, 1973, by the city's ordinance No. 3229, was without the authority required by § 71.015, is therefore void, and the judgment should be reversed.

The judgment is reversed and the cause is remanded with directions that judgment be entered for plaintiffs.

SEILER, C. J., and MORGAN, HENLEY and DONNELLY, JJ., concur.

BARDGETT, J., concurs in result.

FINCH, J., dissents in separate dissenting opinion filed.

HOLMAN, J., dissents and concurs in separate dissenting opinion of FINCH, J.

FINCH, Justice (dissenting).

I respectfully dissent.

The principal opinion holds that by the enactment of the Sawyers Act (§ 71.015 RSMo 1969) "the legislature intended to require the city to comply with the Act with respect to the area ultimately annexed and to require judicial authorization for that particular action". Stated differently, it holds, as I understand it, that when the court enters a judgment in a Sawyers Act case, approving and authorizing annexation of an area specifically described therein, that decree authorizes only annexation of the precise tract so described, and if the city concludes to change that area by deleting any part thereof, the situation is exactly the same as if the city had not brought a suit under the Sawyers Act and it must start all over with a new action and process that case to a successful and final conclusion.

Does the Sawyers Act so require? The answer, in my view, is a definite "no".

In our resolution of this case, certain established principles are applicable. Questions of whether and what to annex are legislative rather than judicial. The only judicial function is a determination of whether the annexation decided upon by a legislative body "is so palpably unreasonable and unnecessary as to be an arbitrary and oppressive exercise of its legislative power". *City of St. Joseph v. Hankinson,* 312 S.W.2d 4, 9 (Mo.1958). The judicial function is limited to so determining and does not involve a judgment as to the propriety or advisability of the legislative decision. *City of St. Joseph v. Hankinson, supra; City of St. Ann v. Buschard,* 356 S.W.2d 567 (Mo.App.1962). If it is found that reasonableness of the annexation is fairly debatable, that ends the question so far as the courts are concerned. *City of St. Joseph v. Hankinson, supra; City of Aurora v. Empire District Electric Co.,* 354 S.W.2d 45 (Mo.App.1962).

The Sawyers Act did not change the judicial function in annexation matters. It simply changed the time of such judicial determination and the burden of proof therein. Prior to enactment of the Sawyers

Act, any judicial determination of whether an annexation was arbitrary and unreasonable was performed in suits attacking an annexation already consummated. In such proceedings the burden of proof of an arbitrary and unreasonable legislative determination was on those attacking the annexation. Since enactment of the Sawyers Act, a city proposing to annex an area is obligated to bring suit before annexation. In that action the court, as a condition to annexation, is to find such annexation to be reasonable and necessary to the proper development of the city and that within a reasonable time after the annexation, the city will be able to furnish municipal services to that area. The burden of making a prima facie showing of these facts is placed on the city. *City of St. Joseph v. Hankinson, supra; City of Aurora v. Empire District Electric Co., supra.* In other respects, the law remains unchanged.

On April 6, 1962, the city council of Liberty adopted a resolution in which it made a legislative determination that a tract of land described in said resolution was contiguous and readily accessible to the city of Liberty, that such tract was reasonably necessary to the proper development of that city, and that it would be able to furnish normal municipal services to such area within a reasonable time after January 1, 1967. Thereafter, pursuant to the requirements of the Sawyers Act, the city filed a declaratory judgment action seeking approval of and authorization for such annexation effective January 1, 1967.

After an evidentiary hearing in said proceeding, the circuit court entered a judgment in which it found that persons fairly representative of all landowners in the area to be annexed had been chosen and served as defendants and that the evidence disclosed (1) that the annexation sought was reasonable and necessary to the proper development of the city of Liberty and (2) that the city had the ability to furnish normal municipal services to the area in question within a reasonable time after the annexation scheduled for January 1, 1967.

That judgment was not appealed and became final. Pursuant thereto, the city council, on September 6, 1963, the date the decree in the Sawyers Act case was entered, adopted Ordinance No. 2278 extending the city limits of Liberty so as to include the area described in the judgment of the court, said annexation to be effective from and after January 1, 1967.

The judgment of September 6, 1963, complied with the requirements of the Sawyers Act and constituted a finding, binding on the inhabitants of the area described in the judgment, that annexation of the tract therein described (stated in the testimony to be a 20 to 25 square mile tract) was reasonable and necessary and that the city of Liberty could furnish municipal services thereto within a reasonable time. If the city had not thereafter amended Ordinance No. 2278, the annexation provided for therein would have been complete and effective January 1, 1967, and the lands of those who are plaintiffs in this suit would have been within the city limits of Liberty. This is not disputed by plaintiffs.

However, instead of allowing Ordinance No. 2278 to stand as originally passed, the city council on December 22, 1965 (before the ordinance was scheduled to become effective) amended said ordinance to exclude from the tract to be annexed that portion thereof lying east of Interstate Hwy. 35 and north of Fishing River. The record does not disclose the precise size of that tract. However, counsel for plaintiffs stated in circuit court that it consisted of "a very slight additional area that would in effect square off the northeast corner". He also referred to it as "little, almost triangular". Hence, it is clear that the tract deleted by action of the city council on December 22, 1965, was a small portion of the area originally proposed for annexation.

Thereafter, after a series of ordinances which ultimately extended the effective date of annexation to January 1, 1973, were adopted, the city council, on October 30, 1972, again amended the description contained in the ordinance so as to exclude an

additional part thereof. The area remaining was that portion of the original tract which was nearest to the then existing city limits of Liberty. It was described in the testimony as a ten square mile tract.

On December 21, 1972, which was after the city had passed the ordinance substantially reducing the area to be annexed but before the annexation was to become effective, plaintiffs filed this action in three counts, seeking in Count One injunctive relief against the annexation, in Count Two, a declaratory judgment that the annexing ordinance was invalid and gave Liberty no authority to annex the revised area, and in Count Three, a decree in a quo warranto proceeding instituted by the prosecuting attorney which would prohibit the city and its officers from exercising any jurisdiction over the area included in the amended description. Said petition alleged numerous grounds for the relief sought, but insofar as material to the issue we deal with on this appeal, those allegations were that since the date fixed by the court (and by Ordinance No. 2278) as the effective date of the annexation originally sought, various substantial changes had occurred which caused the annexation no longer to be reasonable and necessary for the proper development of the city and since Liberty did not plan to and was not able to provide municipal services to the tract to be annexed, the prior adjudication was not a valid authorization for the annexation finally proposed.

A trial was held in this new action after which the trial court made the conclusions which are recited in the principal opinion. It should be noted that included therein is a determination that plaintiffs had failed to establish that there has been such a change in conditions and circumstances as to make annexation of the lesser area under authority of the judgment of September 6, 1963, unreasonable and that therefore annexation on January 1, 1973, of the lesser area pursuant to the earlier judgment was valid and effective.

We thus deal with a situation in which Judge Elliott, after hearing evidence, on September 6, 1963, entered a judgment holding that annexation of the originally described tract was reasonable and necessary to the proposed development of Liberty and that the city had the ability to extend municipal services thereto within a reasonable time after annexation, then scheduled for January 1, 1967. Thereafter, after reductions in the area and delay in the date of proposed annexation to January 1, 1973, we have a finding and judgment by Judge Connett, entered after trial of this case, that the evidence heard by him did not show any change in conditions or circumstances which made the annexation then proposed (the area after deletions made December 22, 1965, and October 30, 1972) unreasonable or unnecessary and that the adjudications of reasonableness, necessity and ability to supply services made in the September 6, 1963, judgment remained applicable and binding. Under such circumstances, is there any reason for us on appeal to nullify the effect of the September 6, 1963, judgment and, as a result, to invalidate the annexation made January 1, 1973?

Plaintiffs argue that we should, saying that the Sawyers Act decree must pass on and approve the exact annexation to be consummated. If the area is reduced at all or the time for annexation is postponed, say plaintiffs, the court has not scrutinized and approved the precise annexation to be consummated and a new Sawyers Act petition, hearing and judgment are required as a prerequisite to the right of the city to annex. The severity and inflexibility of plaintiffs' position is demonstrated and underscored by what occurred during oral argument of this case. Counsel for plaintiffs was asked whether a new, full-blown Sawyers Act proceeding would be required if, after entry of the prior judgment had become final, an error in the description of the area to be annexed was discovered and a corrected description was adopted by the city. He replied in the affirmative. In other words, the city could not rely on the prior Sawyers Act judgment and would have to start anew.

In my judgment the Sawyers Act neither requires nor justifies such a result. The apparent objective of that act was simply to have the court look at a proposed annexation ahead of time, thereby avoiding the necessity of undoing an annexation previously consummated. It was not to impose supertechnical restrictions on judicial determination of reasonableness or to mandate repetitive and unnecessary litigation simply because some reduction in the area is made after adjudication but before annexation or because some delay in consummating the annexation occurs. Yet, that is precisely the effect of the rule announced in the principal opinion. To illustrate, no objections were raised when the city on December 22, 1965, deleted the small triangular area from the original tract and the city probably could have gone ahead at that time on the theory that it was authorized to complete the annexation under authority of the Sawyers Act judgment of September 6, 1963. That judgment, however, did not describe the tract as annexed and if the rule, espoused by plaintiffs and adopted in the principal opinion, is to be that the court must look at and approve the precise tract to be annexed, then on the basis of a supertechnical requirement read into the Sawyers Act, the city was not authorized by the prior judgment to annex the decreased area and the annexation would be subject to subsequent attack.

I cannot accept such a result as a correct interpretation of the Sawyers Act and what it requires. When Judge Elliott heard the original case, he necessarily looked at the 20 to 25 square mile tract and concluded that it, including all parts thereof, was reasonably necessary to the proper development of Liberty and that the city within a reasonable time could furnish municipal services to the entire tract. His finding is not subject to the interpretation that annexation was reasonable and necessary only if every foot of the original tract was annexed. Obviously, if Liberty had sought to add land not originally included and not considered by Judge Elliott, a new proceeding would have been required, but when the city simply deleted a portion of the tract approved by the court, an automatic new proceeding should not be a prerequisite to completion of the annexation.

This is a time when the courts of this state are hard pressed to handle expeditiously the greatly expanded and still growing case load with which they are confronted. When the language of the Sawyers Act does not require otherwise, it is both logical and reasonable to interpret it as saying that when a court, in a suit brought pursuant to that Act, approves a legislative determination to annex a tract therein described, that judgment will authorize annexation, without the necessity of a new Sawyers Act proceeding, of all of that tract or a part thereof, provided that if persons affected thereby so desire, they may bring a suit attacking annexation of the decreased portion of the original tract on the basis that because of the decrease in area (or a delay in consummation) the annexation no longer is reasonable or necessary. If and when such suit is brought and the court finds that the proponents therein ·have proved their contentions and that annexation is not reasonable and necessary for those reasons, the annexation should be prohibited. Such an interpretation protects the rights of persons genuinely affected by a decrease in acreage or a delay in consummation of the annexation. At the same time it avoids the useless and wasteful practice of requiring a whole new Sawyers Act proceeding simply because there has been a reduction in acreage or a delay in the date of annexation. In my judgment, this interpretation is in accord with what the General Assembly intended by the Sawyers Act.

An examination of the evidence offered by plaintiffs in this case discloses that plaintiffs were not relying on and did not seek to show changed conditions resulting from the decrease in the area to be annexed. For example, they did not seek to show that the reduced tract was of such a character that without the part excluded it would not be amenable to development, and

that annexation of that part alone would be unreasonable. They did not seek to show that access to the reduced area was not good or feasible. They did not seek to show that the boundaries, as now drawn, were so irregular as to be impractical or that the new area was not contiguous to the city. They did not even seek to show that the city's financial situation had deteriorated so that it could not furnish services to the new area or that the city had less equipment and personnel than at the time of the prior Sawyers Act adjudication and for that reason could not furnish services. In other words, they did not present evidence to show that changes were produced by the reduction in area which made annexation unreasonable or unnecessary or that the city's ability to perform had changed. Instead, they sought, as the transcript discloses, to go into matters settled by the September 6, 1963, judgment and on that basis to defeat the annexation. For example, they kept seeking to introduce evidence that Liberty has plenty of vacant land within the city and does not need to expand. They wanted to go into the character of the area to be annexed and to prove that it is mostly farm land, and not an area in which there are substantial housing developments or matters of that nature. The trial judge pointed out that these were attempts to go behind the prior judgment and to relitigate questions settled therein and he did not permit an attack on the annexation on such basis.

If the principal opinion stands, the city will have to pass a new resolution to annex the revised area and then bring an entirely new action under the Sawyers Act. The judgment rendered September 6, 1963, will not be res judicata of anything. The city again will be required to make proof that it needs to expand its boundaries, that it does not have enough undeveloped area within its present boundaries to meet its needs and that it is reasonable and necessary to annex the particular tract described. It also will have to prove again that it will be able to furnish municipal services within a reasona-

ble time to this area. As a result, plaintiffs will get to relitigate issues resolved by the first judgment, and plaintiffs will get a third bite at the apple. They had their first bite in their opportunity to litigate these issues and they stood by, allowing a final judgment to be entered. They had their second bite in the trial of this case before Judge Connett. They had every opportunity to establish that the reduction in area and the delay in time had caused the annexation as then proposed to be unreasonable and unnecessary. They failed to so show and the court so found. They are not entitled to and I would not give them a third bite. I would affirm the judgment.